459 So.2d 105 (1984)
Earlene Netherland WILEY
v.
Charles William WILEY.
No. 16535-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1984.
*106 Kidd & Kidd, by Paul Henry Kidd, Jr., Monroe, for appellant.
North Louisiana Legal Assistance Corp., by David A. Titman, Monroe, for appellee.
Before PRICE, JASPER E. JONES, and NORRIS, JJ.
PRICE, Judge.
Defendant, Charles Wiley, appeals the judgment of the trial court awarding sole custody of the minor child, John William Wiley, to the plaintiff, Earlene Netherland Wiley. We affirm for the following reasons.
The plaintiff and the defendant were married on April 14, 1977 and the child, John William Wiley, was born on February 2, 1978. On August 29, 1983, plaintiff filed for a divorce on the grounds of living separate and apart in excess of one year, alleging that the parties had physically separated on November 19, 1981. Plaintiff requested sole custody of the child and that the defendant not be granted any visitation rights due to defendant's "violent tendencies." Defendant reconvened seeking sole custody of the minor.
At the trial, plaintiff testified that the defendant had an uncontrollable temper and had physically abused the child beginning when the child was an infant. Plaintiff related several abusive episodes to the court particularly the defendant beating the child with a metal welding rod. Plaintiff had physical custody of the child and the defendant had not seen the child for approximately two years. When asked about the defendant's relationship with the child, plaintiff stated that the child did not wish to see his father because the defendant had hurt him. Plaintiff testified that she was afraid that the defendant would lose his temper and harm the child if he was granted visitation rights. The plaintiff has been living with her sister at an undisclosed location and defendant has only been allowed to visit with the child at a police station.
Plaintiff did not produce any medical evidence as to child abuse but testified that in routine examination, a physician had noticed the child's bruises and had questioned her about them. Plaintiff did offer one witness who testified that she had observed the defendant discipline the child rather harshly on one occasion. When asked about the lack of corroborating witnesses, plaintiff testified that the defendant did not generally abuse her or the child in front of other people and she was too afraid of her husband to press charges.
Plaintiff and her sister testified that the child now lived in a stable, loving environment. The child is doing well in school and attends church. The child lacks no necessities or material needs such as clothing, balanced meals and medical care. The home is located in a suitable neighborhood.
The record established that the defendant had so severely beaten the plaintiff that she required total hip replacement. As a result of this, plaintiff is physically impaired and has difficulty in finding employment. This incident resulted in defendant's conviction of second degree battery with a three year suspended sentence.
Defendant testified that he had never harmed the child in any way and offered several witnesses, including his daughter from a previous marriage, who testified that the defendant was a loving father. The witnesses generally testified that the defendant was good with children and not *107 an abusive disciplinarian with an uncontrollable temper. Defendant's sister, Wilma Lassiter, testified that she had spent a great deal of time with the family and had never observed any signs that the child was abused. Defendant admitted that he had severely injured his wife but stated it was an accident. He testified that he was angry with plaintiff's adultery and she had given a valuable air compressor to one of her male friends.
Although each party alleged the other's infidelity, much of the trial centered upon the plaintiff's conduct. Plaintiff testified that she had never committed adultery. However, defendant produced three witnesses, including the defendant's nephew, who testified that they had sexual intercourse with the plaintiff during her marriage to the defendant. The testimony indicated that when the adulterous acts occurred, the child was in close proximity in the house or was asleep in the same bedroom. Several witnesses testified that the plaintiff had smoked marijuana in front of the child.
Plaintiff testified that she had voluntarily committed herself to Pineville for a short period of time for treatment of a phobia. However, defendant inferred it was actually for the treatment of nymphomania.
Defendant attempted to introduce into evidence the divorce judgment from plaintiff's previous marriage. The divorce was granted on the grounds of plaintiff's adultery and the custody of the child of that marriage was awarded to the father. The court ruled that the judgment was inadmissible.
Noting that the testimony as to child abuse may have been exaggerated, the trial court nevertheless found that joint custody was not in the best interests of the child. Considering the past relationship between the parties and defendant's severe attack upon plaintiff, the court found joint custody would serve only to foster continued wrangling and disagreement between the parties.
The court granted the divorce and awarded custody of the minor to the plaintiff with visitation rights as follows:
(b) During the month of February 1984 Charles Wiley will be able to exercise visitation rights with the minor from 9:00 A.M. until 5:00 P.M. on alternating Saturdays not more than twice in February. Seven days notice must be given to Earline Wiley by Charles Wiley of the Saturday of visitation;
(c) During the month of March 1984 Charles Wiley will be able to exercise visitation rights with the minor from 5:00 P.M. Friday until 5:00 P.M. Saturday on alternating weekends not to exceed two weekends in March of 1984; seven days notice must be given also;
(d) During the month of April 1984, and thereafter, Charles Wiley will be able to exercise visitation rights with the minor from 5:00 P.M. Friday until 5:00 P.M. Sunday, on two alternating weekends of each month; again, Charles Wiley must give Earline Wiley seven days notice of which weekends he intends to exercise visitation rights;
(e) The minor child will always be with the mother on Mother's Day;
(f) The minor child will always be with the father on Father's Day;
(g) Easter holiday (from 5:00 P.M. on the close of school before, until 5:00 P.M. of the day before school opens) will be spent with the mother on odd numbered years and the father on even number years;
(h) Thanksgiving (from 5:00 P.M. on the day school closes before, until 5:00 P.M. on the day before school opens) will be spent with the mother on even numbered years and the father on odd numbered years;
(i) Christmas will be divided into two holidays: (A) from 5:00 P.M. on the day school closes before Christmas until noon Christmas Day; (B) from noon Christmas Day until 5:00 P.M. on the day before school resumes after Christmas; the first Christmas holiday will be spent with the mother on even numbered years and *108 the father on odd numbered years; the second Christmas holiday will be spent with the mother on odd numbered years and the father on even numbered years;
(j) The child will spend his birthday with his father on odd numbered years and his mother on even numbered years. The birthday visitation will be from 5:00 P.M. February 1st until 5:00 P.M. February 2nd.
Plaintiff was awarded $200.00 per month child support.
On appeal, defendant urges the following assignments of error:
(1) The trial court erred in refusing to consider plaintiff's prior divorce judgment after plaintiff denied ever committing adultery and when plaintiff's adultery in the presence of the child was at issue.
(2) The trial court erred in awarding plaintiff sole custody of the minor child when defendant should have been awarded sole or joint custody or at the least, more liberal visitation rights.
Plaintiff argues that the defendant's appeal is untimely.
It is necessary to first consider plaintiff's argument that the defendant's appeal is untimely and should therefore be dismissed. Plaintiff notes that pursuant to La.C.C.P. Arts. 3942 and 3943, an appeal from a judgment awarding custody must be taken within thirty days from the applicable date provided in La.C.C.P. Art. 2087(1)-(3). The article provides in pertinent part that the appeal must be taken within the stipulated time after the expiration of the delay for a new trial, as provided by La.C.C.P. Art. 1974, if no application has been timely filed. La.C.C.P. Art. 1974 provides as follows:
The delay for applying for a new trial shall be seven days, exclusive of legal holidays. Except as otherwise provided in the second paragraph hereof, this delay commences to run on the day after the judgment was signed.
When notice of the judgment is required under Article 1913, the delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913.
As defendant did not file a motion for a new trial, plaintiff alleges the appeal is untimely as it was filed on March 13, 1984, more than thirty-seven days after the trial court judgment was signed and filed on February 2, 1984.
An examination of the pertinent articles in conjunction with each other reveals that the defendant's appeal is timely. It appears that no notice of judgment was required under La.C.C.P. Art. 1913, therefore the delay for applying for a new trial commenced to run after the judgment was signed and filed on February 2, 1984. The delay period does not include legal holidays in accordance with La.C.C.P. Art. 5059[1] as they are expressly excluded by the article. L.S.A.-R.S. 1:55 provides in pertinent part that Saturdays and Sundays as well as enumerated holidays shall be considered as legal holidays for purposes of computation of time under La.C.C.P. 5059. Therefore, in counting the seven day delay period, Saturdays and Sundays are legal holidays and are not counted. Nat. American Bank of New Orleans v. Purvis, 407 So.2d 753 (La.App. 1st Cir.1981).
Using these rules in calculating the applicable delay period in the instant case, it is clear that the defendant's appeal was timely as Saturdays and Sundays are excluded from the seven day period for application *109 for a new trial. In other words, the delay period for a timely appeal in the instant case is longer than thirty-seven days after the judgment was signed as weekend days are not counted in the initial seven day delay period for application for a new trial.
ASSIGNMENT OF ERROR NO. 1
At the trial on this matter, the plaintiff testified that she had never committed adultery. Defendant sought to introduce as evidence a judgment of divorce from plaintiff's previous marriage on the grounds of plaintiff's adultery. Custody of the child from that marriage was awarded to the father. The court ruled that the judgment was inadmissible.
On appeal, defendant argues that the judgment was admissible for the following reasons:
1. To impeach plaintiff's testimony that she had not committed adultery;
2. As evidence to corroborate defendant's allegations of adultery; and
3. As evidence concerning plaintiff's fitness as a mother regarding other children.
The judgment of divorce was rendered on October 7, 1975 against the plaintiff on the grounds of adultery. Even if the judgment was admissible evidence in the instant proceeding, it would have little probative value. The judgment contains no facts as to the circumstances surrounding the adultery or why custody of the child was granted to the father. The facts underlying the judgment occurred at least nine years ago, too remote in time to have relevance in this case. The adultery may have been a single isolated incident far removed from and outside of the presence of the child. Furthermore, the custody of the child may not have been a contested issue but rather stipulated by the parties. It would be speculative to infer from the face of the judgment in the record that the adulterous conduct was committed in the presence of the child or that the plaintiff was adjudged unfit.
While the introduction of the judgment of divorce may have been valid to impeach plaintiff's testimony, it certainly would not act to corroborate defendant's allegations of adultery. It does not show a pattern or predisposition to such acts. Further, as noted earlier, the judgment does not act as evidence that plaintiff was previously adjudged an unfit mother. Thus, the error on the part of the trial court, if any, in refusing admit the judgment into evidence was harmless error.
ASSIGNMENT OF ERROR NO. 2
Defendant contends that the trial court erred in awarding plaintiff sole custody when the defendant should have been awarded sole or joint custody or alternatively, more liberal visitation rights.
Defendant contends that the evidence does not show that he ever abused the child and the severe injury to his wife was mitigated by her rampant adultery. Defendant essentially contends that the evidence proves that plaintiff committed adultery and used drugs in the presence of the child and therefore, is unfit to have sole custody of the minor. Plaintiff denies any moral unfitness and argues that even if she was found to have committed adultery, there was no proof that these acts were committed in front of the child and it does not affect her ability to be a good mother to the child.
C.C. Art. 146 provides that there is a rebuttable presumption that joint custody is in the best interests of the child. However, this presumption may be rebutted by showing that it is not in the best interests of the child after the court considers the evidence introduced with respect to the following factors:
(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.

*110 (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute.
It is well-settled that great weight is to be accorded to the discretion of the trial court in custody matters and the judgment will not be disturbed absent a finding of abuse of such discretion. Williams v. Williams, 431 So.2d 856 (La.App. 2d Cir.1983), Howes v. Howes 388 So.2d 1182 (La.App. 4th Cir. 1980), Burch v. Burch, 398 So.2d 84 (La. App.3d Cir.1981) and Montgomery v. Montgomery, 383 So.2d 1384 (La.App. 4th Cir.1980). Great deference is accorded by the appellate courts to the trial court's assessment of the credibility of witnesses based upon that court's personal observation of the witnesses and evaluation of their testimony. The trial court has a better position from which to evaluate the best interests of the children from a total overview of the conduct and character of the parties and the children and of community standards. Williams v. Williams, supra.
It is clear from the record in the instant case that the trial court did not abuse its discretion in awarding plaintiff sole custody of the child with visitation rights in favor of the defendant. The evidence demonstrates that plaintiff has a warm, loving relationship with the child and provides a stable environment lacking no material needs. The child attends church regularly and appears to be doing well in school. While the court noted that plaintiff's allegations as to child abuse may have been exaggerated, it is quite apparent from the record that the defendant does have a violent temper as evidenced by the injuries he inflicted upon his wife.
Examining defendant's claim that plaintiff is morally unfit, it is well-settled that infidelity per se does not result in a parent being denied custody. Howes v. Howes, supra. Rather, it is necessary to examine whether such behavior was damaging to the child. This determination involves the evaluation of several factors:
(1) Is the child aware of the illicit relationship?
(2) Has sex play occurred in the presence of the child?
(3) Was the sexual misconduct notorious, bringing embarrassment to the child?
(4) What effect has this conduct had on the family home life?
Williams v. Williams, supra, at p. 858 and citation therein.
While there was some testimony that the plaintiff had committed adultery in the presence of the child, at one point the court noted that the testimony was so bizarre that it was unbelievable. The court was able to hear and evaluate all of the testimony and to assess the credibility of each of the witnesses. Even if plaintiff had committed adultery, it appears that the court found that there was no conclusive evidence that the sexual behavior occurred in the presence of the child or that it was in any way detrimental to the child so as to render plaintiff morally unfit. Further, moral fitness is only one of eleven factors that the court must consider. There was no abuse of discretion in not awarding defendant *111 sole or joint custody based upon the evidence adduced at trial. As the court noted, due to past relationship between the parties, joint custody may have only served to foster continued disagreement and therefore, would not be in the best interests of the child.
Defendant argues that he should have been awarded more liberal visitation rights. Defendant is employed "off-shore" and works a fourteen day period off-shore with seven days on-shore. Examining the visitation rights, especially in light of defendant's work schedule, it is clear that the visitation rights are reasonable.
For these reasons, the judgment in favor of plaintiff, Earlene Netherland Wiley, is affirmed at defendant's, Charles Wiley's, costs.
NOTES
[1] Art. 5059. Computation of time

In computing a period of time allowed or prescribed by law or by order of court, the date of the act, event, or default after which the period begins to run is not to be included. The last day of the period is to be included, unless it is a legal holiday, in which event the period runs until the end of the next day which is not a legal holiday.
A half-holiday is considered as a legal holiday. As legal holiday is to be included in the computation of a period of time allowed or prescribed, except when:
(1) It is expressly excluded;
(2) It would otherwise be the last day of the period; or
(3) The period is less than seven days.