576 So.2d 100 (1991)
Ronald Troy PLUNKETT, Appellee,
v.
Evelyn Lee Culpepper PLUNKETT, Appellant.
No. 22111-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1991.
*101 William R. Jones, Coushatta, for appellee.
Stewart & Stewart by Jonathan M. Stewart, Arcadia, for appellant.
Before MARVIN, NORRIS and HIGHTOWER, JJ.
NORRIS, Judge.
The mother, Evelyn Plunkett, appeals a judgment that denied her request to modify a prior joint custody decree. She advances two arguments:
(1) The trial court erred in applying the "heavy burden" rule of Bergeron v. Bergeron, 492 So.2d 1193 (La.1986) to this case, which did not involve a prior considered decree of permanent custody; and
(2) The trial court erred in restricting the evidence, insofar as it pertained to custody, to events that occurred after a prior custody rule was tried.
For the reasons expressed, we affirm.

Procedural background
The father, Ronald Plunkett, filed a petition for separation on March 31, 1988, alleging that Evelyn had abandoned him one week earlier, on March 24. He prayed for joint custody and submitted two plans of implementation. Mrs. Plunkett filed an answer and reconventional demand alleging that she left because they had an altercation which forced her to flee with the two minor children, Mathew and Timothy, ages 9 and 6. She prayed for an ex parte order of provisional sole custody.
Rules for custody (as well as for child support and alimony pendente lite) were consolidated and heard on April 21, 1988. The transcript of this hearing was included in the record on motion of the appellee, Ronald Plunkett. Both Mr. and Mrs. Plunkett testified that they loved the children and could care for them during custodial time. They had separated before but reconciled, according to Mrs. Plunkett, when Ronald promised that certain things would change around the house, but he had not lived up to these promises. They also disagreed about raising the children; Mrs. Plunkett felt Ronald was too willing to keep them out of school to help on the farm, which she disapproved of. In fact, on the date of their separation they had fought over this. Seven other witnesses, including two of Mr. Plunkett's children of an earlier marriage, testified as to the parties' respective merits as loving, caring parents; the general concensus was that both Mr. and Mrs. Plunkett were fit to exercise custody. The trial court ruled that joint custody was appropriate and a six month-six month split was feasible. By judgment of May 27, 1988 the court awarded joint custody, naming Mrs. Plunkett the domiciliary parent from January 1 to July 10 (the *102 better to divide the summer vacation) and Mr. Plunkett from July 10 to December 31, with provisions for visits and holidays. Mr. Plunkett was to pay child support of $500 per month only in months when Evelyn had domiciliary custody. Alimony pendente lite was also awarded. Although Mrs. Plunkett had prayed for provisional custody and there was no judgment of separation yet, the May 1988 custody decree was not designated as provisional, temporary or pendente lite. She moved for a new trial but this was denied. She did not appeal.
A few months after Mr. Plunkett began his custodial time, Mrs. Plunkett amended her reconventional demand. She alleged that Ronald was committing adultery with a certain lady, "M.P.," while the children were in the house. Alleging that this immoral behavior was detrimental to the children, she prayed for a summary hearing to award her sole custody. She also sought a divorce on grounds of adultery; Mr. Plunkett answered and by rule sought a reduction of alimony pendente lite.
These rules were consolidated and heard on November 10, 1988. According to the court minutes, testimony was introduced, exhibits entered and filed into evidence and the matter heard to its conclusion. This hearing, however, was not designated as part of the appellate record by the appellant, Evelyn Plunkett, and it is not before us. The court denied the change of custody and by judgment of December 14, 1988 ordered the original joint custody plan to be continued. The court also granted Ronald's request to reduce alimony pendente lite.
In April 1989 Mr. Plunkett amended his petition to pray for divorce on grounds of continuous separation for one year or more, La.R.S. 9:301. In response, Mrs. Plunkett amended her reconventional demand to restate Ronald's pre-separation fault and to pray for sole custody with more restricted visitation. The parties partitioned their community property by agreement but proceeded to trial in October 1989 on all other issues. The minutes again recite that testimony was entered, exhibits filed into evidence and the matter heard to its conclusion. Mrs. Plunkett, however, designated only her own and Ronald's testimony and the trial court's oral reasons for judgment as part of the appellate record. She also designated a narrative of the children's in camera testimony but the parties were unable to agree on a narrative so none was filed.
At the October 1989 trial Mrs. Plunkett testified that "On many occasions, several times a month since November 10 [1988] she [M.P.] has come down to the house late at night. I did not write any dates down, it never occurred to me. I was usually in bed * * *. By the time I got down the lane [M.P.] would be entering the house and she'd head straight for Ronald's bedroom." R.p. 223. Mr. Plunkett admitted that M.P. paid him short visits before November 1988 but never after. R.p. 189. He admitted that when she had visited, they would shut (but not lock) the door to keep the children out. Mrs. Plunkett filed, as Exhibit D-2, a report from a private investigator who followed Ronald for three days in late August 1988. The court apparently accepted this pre-November 1988 evidence to prove adultery for the divorce but not to prove Mr. Plunkett's parental unfitness. The report states that M.P. visited Mr. Plunkett at his house on three consecutive nights, but she always came late, when the children were in bed.
In oral reasons the trial court stated that Bergeron applied to Mrs. Plunkett's custody rule and that there was "not a change of circumstances to justify a change [of custody]." The court denied her rule and incorporated the prior joint custody decree. The court granted Mrs. Plunkett a divorce on grounds of Ronald's adultery but found both parties at fault at the time of the separation. Judgment was rendered in November 1989 and Mrs. Plunkett's motion for new trial was denied. Evelyn has appealed.

Discussion
By her first assignment Mrs. Plunkett urges the trial court erred in applying the "heavy burden" rule of Bergeron v. Bergeron, supra, to this case. The law creates *103 a rebuttable presumption that joint custody is in the best interest of a minor child. La.C.C. art. 146 C. Joint custody may be terminated if the child's best interest requires modification or termination of the custody plan. Art. 146 E. Under Bergeron, however, the party seeking to modify a considered decree of permanent custody must prove a change of circumstances materially affecting the child. Mrs. Plunkett cites the following language from Bergeron:
When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. 492 So.2d at 1200 (emphasis added).
Focusing on the emphasized language, Mrs. Plunkett argues the original custody decree of May 1988 was provisional, not permanent, and that she should not have been required to overcome the heavy burden of Bergeron. Rather, she argues, she only needed to prove that an award of sole custody would be in the children's better interest.
We disagree with Mrs. Plunkett's effort to evade the heavy burden rule. In spite of the cited passage which arguably confines the holding of Bergeron to considered decrees of permanent custody, we find the following passage on the last page of the reported opinion:
[T]he change of circumstances rule, the heavy burden rule, and the appellate review standard apply to any petition to modify custody, regardless of whether it is joint or sole custody. 492 So.2d at 1203 (emphasis added).
At the heart of Bergeron is a concern that a child's interest and welfare could be irreparably damaged not only by mistaken changes in custody but also by the effects of an attempted or threatened change of custody on grounds that are less than imperative. Unjustified litigation, the threat of litigation, or continued parental conflict can bring about unfavorable mental and emotional consequences in children. The Supreme Court's purpose in Bergeron was to protect children from the detrimental effects of too liberal standards in custody change cases. This purpose would be ill served by imposing a heavy burden to modify some considered decrees of custody but not others. This court has applied the heavy burden rule in a case where the prior considered decree preceded the judgment of separation and was in that sense "provisional." See Murray v. Murray, 521 So.2d 754 (La.App. 2d Cir.1988).
We also reject Mrs. Plunkett's characterization of the May 1988 decree as "provisional" only. Although she prayed for provisional custody, the judgment is not limited to any period of time; it simply awards joint custody to both parents. Mrs. Plunkett has cited pre-Bergeron cases but these actually indicate that "provisional" custody decrees are not favored. Barilleaux v. Barilleaux, 381 So.2d 518 (La. App. 1st Cir.1979); Primm v. Primm, 409 So.2d 1288 (La.App. 2d Cir.1982). Even though a custody decree is permanent, it is always subject to modification under the appropriate standard. See In re Toler, 262 La. 557, 263 So.2d 888 (1972); Clark v. Clark, 550 So.2d 913 (La.App. 2d Cir.1989). Here the May 1988 judgment ordered permanent custody. It is a "considered" decree because evidence was adduced concerning parental fitness. Dungan v. Dungan, 499 So.2d 149 (La.App. 2d Cir.1986). This judgment is subject to the Bergeron standard for modification of custody.
At the first custody hearing in April 1988 the parties and several witnesses testified about Mr. and Mrs. Plunkett's relative fitness as parents. There was no testimony about adultery. The trial court concluded that joint custody was appropriate and a 50/50 split feasible. The second custody hearing (November 1988) was prompted by Mrs. Plunkett's allegations of Ronald's adultery. Because this hearing was not transcribed we can only assume that Mrs. Plunkett offered her evidence and the court did not find it sufficient to justify changing *104 the custody order. At the third hearing, which is partly transcribed, Mrs. Plunkett testified that Ronald was having an affair with M.P.; she had seen them in bed together. R. pp. 137, 142. She also testified that they committed adultery in the house in December 1988, when the children were present, but she was vague about dates and had no corroboration. R.p. 223. Mr. Plunkett flatly denied that he had committed adultery in the house, when the children were present, since November 1988. He admitted there were "several" incidents before that date (as the investigator's report would verify) but denied that the children were present.
Acts of adultery do not necessarily disqualify a parent from exercising custody. If the acts are discreet and not shown to have an adverse effect on the children, the offending parent is not rendered morally unfit. Cleeton v. Cleeton, 383 So.2d 1231 (La.1980); Wiley v. Wiley, 459 So.2d 105 (La.App. 2d Cir. 1984). Moral fitness depends on the totality of the circumstances.
In light of the conflicting testimony the trial court's findings are entitled to great weight. Rosell v. ESCO, 549 So.2d 840 (La.1989). On this record the court was entitled to accept Mr. Plunkett's denial that he committed adultery in the house with the children present after November 1988. The court also could find that if such acts occurred, they were after the children were asleep or in bed, as the private investigator had found in an earlier time frame. Thus, Mrs. Plunkett either failed to prove a change in circumstances that materially affected the children; or, if she proved a change, it did not create an atmosphere deleterious enough to merit modifying the custody order. The record evidence certainly does not prove that awarding sole custody to Mrs. Plunkett would clearly and convincingly outweigh the upheaval of changing the existing order. The trial court did not commit manifest error in refusing to modify the original custody decree.
By her second assignment Mrs. Plunkett urges the trial court erred in excluding evidence of the parties' conduct that occurred prior to the court's previous judgment on a rule to change custody. To recapitulate: Mrs. Plunkett's first supplemental and amending petition, filed September 20, 1988, sought a change of custody on grounds that Ronald was committing adultery in the children's midst; she cited 12 dates in July and August 1988 when this allegedly happened. A hearing on the rule was held November 10, 1988, after which the trial court refused to change custody. Mrs. Plunkett's second supplemental and amending petition, filed October 6, 1989, declared it would "state with specificity" additional grounds for changing custody but it cited no dates and reiterated that Ronald's girlfriend came over to the house at night when the children were present. Trial was held on October 10 and 24, 1989. Mrs. Plunkett argues the trial court limited her to evidence of the parties' conduct that occurred after the November 1988 hearing.
Mr. Plunkett argues that neither the transcript nor the court minutes shows any such ruling; and that since the appellant bears the burden of designating a record to support her argument, we should not consider it. La.C.C.P. art. 2128. In the designated transcript, however, Mr. Plunkett's counsel objected to testimony about events prior to November 1988 and the trial court made the objection "general." R.p. 186. This is, we feel, sufficient to support Mrs. Plunkett's contention that the trial court imposed the restriction and we decline to dismiss her argument on the basis of an incomplete record. See La.C.C.P. art. 2161. We nevertheless conclude that the assignment lacks merit.
The trial court has broad discretion in controlling the proceedings at trial. La.C. C.P. art. 1631. The court's discretion extends to the exclusion of relevant evidence for "considerations of undue delay, or waste of time." La.C.Ev. art. 403. Presumably Mrs. Plunkett adduced, at the November 1988 hearing, evidence of her husband's adulterous acts up to that point. The court already received this evidence and concluded it did not justify changing the custody decree. The court obviously *105 had discretion not to hear the same, repetitive evidence in October 1989. There is no reason to think the evidence would be more probative at a second hearing than at the first. We perceive no error in the court's ruling.
Moreover, even if the court erred in limiting the evidence at the October 1989 trial (and we conclude it did not), this would not have changed the outcome. Despite Mrs. Plunkett's allegation in petition that Ronald's girlfriend visited at night when he "believes that the children are asleep," his denials and the private investigator's objective report would support the conclusion that the adulterous acts were discreet and not harmful to the children. Cleeton v. Cleeton, supra; Wiley v. Wiley, supra. In other words, refusal to change the custody order on the basis of all the evidence would not be plainly wrong. Rosell v. ESCO, supra.
Because neither of Mrs. Plunkett's assignments presents legal error, the judgment is affirmed at her costs.
AFFIRMED.