927 So.2d 640 (2006)
Melissa Jo KNOWLTON, Plaintiff-Appellant
v.
John Warren KNOWLTON, Defendant-Appellee.
No. 40,931-CA.
Court of Appeal of Louisiana, Second Circuit.
April 12, 2006.
Anita D. McKeithen, Shreveport, for Appellant.
Cook, Yancey, King & Galloway, by Curtis R. Shelton, Shreveport, for Appellee.
Before BROWN, STEWART and MOORE, JJ.
*641 STEWART, J.
Appellant, Melissa Jo Pruitt (formerly Knowlton), appeals the trial court's judgment denying her requests to modify custody and to terminate child support. She seeks to be designated the domiciliary parent of the two minor children from her former marriage to appellee, John Warren Knowlton. Finding no error in the trial court's judgment, we affirm.

FACTS
Ms. Pruitt and Sgt. Knowlton are the parents of two minor daughters, Michelle and Katie Knowlton. After separating in early 1998, the parties obtained a judgment on rule dated June 29, 1998, awarding them joint custody of the girls and designating Ms. Pruitt as domiciliary parent in accordance with their agreement and stipulations before the court.
Four months later, Ms. Pruitt filed a motion seeking court approval to relocate the girls to Bentonville, Arkansas. Sgt. Knowlton filed an objection to the request and a petition for divorce. Trial began on December 10, 1998, and continued on February 10, 1999. After brief testimony on the second day of trial, the parties reached a stipulation providing that the girls would remain in Bossier City, that Sgt. Knowlton would be the domiciliary parent, and that Ms. Pruitt would pay child support in the amount of $200 per month. A judgment to this effect was signed on April 7, 1999, and a judgment granting the divorce was signed May 25, 1999. Since the change in custody, the girls have lived with their father in Bossier City with frequent visits to their mother in Arkansas. Both parents remarried, and their mother had another child.
On January 31, 2005, Ms. Pruitt filed a motion to modify custody and to terminate her child support obligation. She sought to be named the domiciliary parent and to have the girls move to Arkansas. She alleged as changes in circumstances warranting the modification: (1) the children's ages, (2) the turbulent relationship between Sgt. Knowlton and his new wife, (3) the turbulent relationship between the minor children and their stepmother, and (4) Sgt. Knowlton's discipline of the children.
Trial was held on September 2, 2005. The daughters, Michelle and Katie, testified as to their circumstances, custodial preference, and observations regarding the incidents described in their mother's rule. Their stepmother, Diane, lives in the Knowlton household along with Laura, Diane's grown daughter, and Laura's baby. According to testimony, both Michelle and Katie have a difficult relationship with Diane, who has sought help for emotional problems in dealing with the mixed family arrangement. Testimony also established that their father is a strict disciplinarian and that Katie has had ongoing behavioral problems.
Michelle, who was 16 at the time of trial, is a junior at Airline High School with better than average grades and is working toward a TOPS scholarship from the State of Louisiana. Her father, who described her as "awesome," generally disciplines her by taking away her car or cell phone. Michelle has a job and friends in Bossier City and would prefer to remain there. However, she testified that she was willing to move to Arkansas if that would allow her younger sister Katie to live with their mother. Michelle testified as to her belief that Katie has a hard time in the Knowlton household. She described a more contentious relationship between her father and Katie involving yelling and his occasional use of inappropriate insults and threats of putting her in a youth shelter. Michelle testified that the police had been to their home on three or four occasions, usually due to arguments involving Diane *642 and Laura. Michelle also testified that Diane once threw a phone at her, but neither party elicited any context for the incident.
Kathleen "Katie" Knowlton, who was one month away from turning 14 at the time of trial, testified that she and her stepmother "get along pretty good but we have fights a lot." However, her testimony did not reveal any noteworthy conflicts. She testified that her father called her names and repeatedly threatened to have her arrested or placed in a youth shelter. She also testified that he once reached back during an argument in a car to choke her after she told him he was not a good father. Michelle denied that their father had ever been physically abusive to either daughter. Katie's testimony, as well as Michelle's, also established that Katie presents a very different behavioral picture than Michelle. Katie was placed in Families in Need of Services ("FINS") and private counseling after she was caught riding in a car with an 18-year-old boy whose identity she would not reveal. She was then caught shoplifting at Barksdale Air Force Base, and she has had numerous disciplinary problems in school. Katie expressed the unequivocal preference to live with her mother in Arkansas. She explained that her mother listens to her and that she has a closer relationship with her stepfather than with her stepmother; however, there was no specific evidence in the record regarding either girl having a close relationship with Mr. Pruitt. Katie believed she would not have behavioral problems in Arkansas, because she would "have a better life up there" and "get along better."
Sheri Miller, a former neighbor of the Knowltons', testified about arguments she witnessed between the girls and their stepmother. However, the incidents she observed occurred a year or more prior to trial. She recounted being asked by Sgt. Knowlton on several occasions to take the girls from the home during arguments involving Diane, Laura, and Sgt. Knowlton. She also testified that she witnessed Sgt. Knowlton call the girls names, but she believed he intended it to be in jest even though he may have hurt their feelings.
Sgt. Knowlton admitted that he is a strict disciplinarian and expressed the belief that his daughters were looking for a "bigger better deal" in Arkansas where they would get things on their terms. He admitted that he called the police when he found that Katie had been riding in a car with an 18-year-old boy, whose name she refused to reveal. Sgt. Knowlton requested that she be issued a ticket for being ungovernable. The incident resulted in Katie being placed in FINS with both his and Ms. Pruitt's agreement. He testified that Katie was caught shoplifting at Barksdale and detained without his knowledge. He did not have her arrested. Though the charges were dropped, he agreed with her detention and believed that she should have been prosecuted so that she would have learned that restitution is owed when you commit a crime. He denied ever being verbally or physically abusive to either of his daughters, but he did admit to telling Katie that she did dumb or stupid things. He agreed that Katie may be acting out for attention, but he was adamant that she gets love and affection from all of her family, including her mother. He testified that Katie presents a unique discipline problem and that Ms. Pruitt has even had to call him to ask for advice on how to control her. He also testified that he would have concerns about the girls moving to Arkansas due to Mr. Pruitt's consumption of alcohol and past citations for driving while intoxicated. Lastly, Sgt. Knowlton testified that Diane had twice admitted herself into a psychiatric facility *643 as a result of her difficulty in dealing with the family dynamics.
Ms. Pruitt testified that she lives in Bentonville, Arkansas with her new husband, Don Pruitt, their 5-year-old child, and Mr. Pruitt's 21-year-old son from a previous relationship. She stated that she moved to Arkansas for employment opportunities; however, her testimony indicated a spotty history of employment since the move. Ms. Pruitt denied that her husband is an alcoholic, but she admitted that he drinks between a six pack and twelve pack of beer two to three nights a week and that he had gotten two prior citations for driving while intoxicated. Ms. Pruitt admitted that the police had also been called to her house in response to an altercation between her husband and one of his children. Michelle, who was present, called her father because she perceived that Mr. Pruitt was beating his daughter. Ms. Pruitt indicated that Katie has also presented a discipline challenge for her and admitted to calling Sgt. Knowlton for advice on how to control her. However, Ms. Pruitt disagreed with Sgt. Knowlton's position that Katie should have had legal consequences from the shoplifting incident. She would prefer to handle Katie's discipline at home by monitoring her behavior and taking away privileges. She also admitted that she had been on medication for depression.
In an oral ruling, the trial judge denied Ms. Pruitt's request for change of custody. The trial judge noted that the prior judgment had been a considered decree and concluded there was no showing that it would be detrimental for the children to remain with their father. He noted that Michelle, the older child, expressed the preference to remain in Bossier City and observed that Katie wanted to live with their mother. However, he did not believe a thirteen or fourteen year old should dictate where she lives. He also noted the serious problems which Katie seems to have and the need for Sgt. Knowlton to exhibit more sensitivity when dealing with his teenage daughters. Accordingly, he ordered Sgt. Knowlton to attend some parenting classes and sensitivity training. He also ordered both parties to attend a "Children in the Middle" program. A written judgment was signed on September 14, 2005, and this appeal by Ms. Pruitt followed.

DISCUSSION
The best interest of the child is the primary consideration in any child custody determination. La. C.C. art. 131; Adams v. Adams, 39,424 (La.App.2d Cir.4/6/05), 899 So.2d 726. The trial court is in the best position to ascertain the best interests of the children given each unique set of circumstances. Accordingly, a trial court's determination in the establishment or modification of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Thompson v. Thompson, 532 So.2d 101 (La.1988); Walker v. Walker, 38,982 (La.App.2d Cir.8/18/04), 880 So.2d 956.
Whether the initial custody decree was a stipulated judgment or a considered decree determines the burden of proof applicable when modification is sought. Adams, supra. When the parties stipulated to the initial custodial arrangement and no evidence of parental fitness was taken, the party seeking modification must show a material change in circumstances since the initial decree and prove that the proposed modification is in the best interest of the child. Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731. A considered decree of custody is one made after the trial court receives evidence of parental fitness. The party *644 seeking modification of a considered decree has the heavy burden imposed by Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986), of proving either that the continuation of the custodial arrangement is so deleterious to the child as to justify modification, or the harm likely to be caused by a change of environment is substantially outweighed by the advantages to the child. Adams, supra.
The trial court determined that the Bergeron burden of proof applied. The initial custody decree of April 7, 1999, states that it was made upon "the court having heard the agreement and stipulations of the parties, evidence adduced and for reasons this day orally assigned." According to the minutes, trial began on December 10, 1998, and was continued on February 2, 1999, when an agreement was reached after brief testimony. However, nothing in the record indicates whether the testimony pertained to parental fitness. The parties already had joint custody as per the June 29, 1998 judgment rendered in accordance in with their agreement, and the trial pertained to both the custodial dispute involving Ms. Pruitt's request to relocate and the divorce. Although the record does not clearly indicate that Bergeron was the correct standard to apply, neither party objected. Moreover, our review of this matter convinces us that application of the lesser burden of proof applicable to stipulated judgments would not mandate a different result.
Upon our thorough review of this record, we find no manifest error in the trial court's ruling. It appears clear that both Sgt. Knowlton's and Ms. Pruitt's homes and new marriages present less than ideal circumstances. While it is arguable from the record that going to live with their mother might be better for the girls, it is not self-evident that such an arrangement would be in their best interests. Nor is it clear that the girls' present circumstances are so deleterious that a change of custody is required or that advantages of modification outweigh any harm likely to be caused by the change.
The record establishes that some problems exist in the Knowlton home, especially as relates to Diane's interaction with the girls. However, much of the turmoil can just as easily be linked to the behavior of the youngest child. There is nothing in the record that would lead us to conclude that the same or similar problems would not present themselves if the girls moved to Arkansas to be with their mother.
The trial court recognized the problems in the Knowlton home and the difficulties of raising teenagers, particularly those whose behavior presents unique challenges. In doing so, the trial court ordered the parties to attend a class and specifically ordered Sgt. Knowlton to attend parenting and sensitivity classes to fine-tune his skills in dealing with the girls. The testimony established the complications caused by the introduction of step-parents and step-families in both households. However, the record does not establish how the complications would be alleviated by a move to Arkansas where Ms. Pruitt has also had difficulty dealing with Katie's behavior and where a less than ideal situation also exists.
The witnesses' testimony is subject to many interpretations regarding the motives and desires of both the children and their parents. In this regard, the impressions drawn by the trial judge from his assessment of the body language, mannerisms, and demeanor of the witnesses is very important. Though Michelle was willing to move to Arkansas on her sister's behalf, her own preference and other testimony clearly show that her best interest is served by remaining in Louisiana. Katie clearly has difficulties that her parents *645 must address. Much of the case was about the parties' dispute over how to do so. The trial court had the unenviable task of weighing the disciplinary methods used by Sgt. Knowlton and those preferred by Ms. Pruitt. While the parties clearly differ in their approaches, the evidence did not establish that Katie's best interest would be served by a change in custody. The record shows that Katie has frequent contact with her mother, and nothing suggests that her parents are unable to work together to provide her with consistent love, attention, and discipline to address her needs. Thus, we find no error in the trial court's decision to preserve the status quo with regard to custody.

CONCLUSION
For the reasons stated, the judgment is affirmed. Costs of this appeal are to be paid by the appellant.
AFFIRMED.