CARAWAY, J.,
dissenting.
_JjWith the Bergeron test and its major concerns lost in this matter’s “relocation” emphasis, the majority’s and trial court’s change of custody rulings are in error.
The initial' trial court ruling in 2007 which allowed the domiciliary parent (“Gray”) to move to Toney, Alabama, was a unique “considered decree” as that term has been raised to most important significance by the ruling in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). Not only did the parents contest in 2007 the custody of their child, the facts of the additional complicating factor of relocation were also “considered” and adjudicated under the special relocation statutes for custody in *832 La. R.S. 9:355.1, et seq. While the best interest of the child test is always paramount, the “considered decree” of 2007 not only measured the relevant considerations of Civil Code Article 134 but also the special quality of life, parental employment, financial and feasibility factors associated with relocation to another state set forth in La. R.S. 9:355.13. Once adjudicated by one district judge in 2007, a different district judge in 2010 is prohibited by Ber-geron from allowing the same matter of relocation to be adjudicated again.
First, in our highly mobile society, joint custody arrangements, even those operating harmoniously under the best of conditions, can become greatly impacted by the economic need of a parent to relocate to another state. A framework for a custody decision caused by such relocation is therefore specifically addressed in La. R.S. 9:355.1, et seq. From the | ^standpoint of logistics alone, given the great distance between the parents’ residences, the decision is difficult. That difficult decision was made in 2007 with Gray being allowed to remain as domiciliary parent and move to Alabama, a great distance from the location of the prior joint custody setting in Louisiana.
Second, the statute’s definitional terms provide that “relocation” means “[ijntent to establish legal residence with the child at any location outside of the state.” La. R.S. 9:355.1(4)(a). In the light of Berger-on, the correct reading of that definition is that the initial establishment, founding or beginning that out-of-state residency, is Louisiana’s concern for adjudication when the nexus of joint custody operating in Louisiana is first broken.
Third, once relocation out of state has occurred and the special factors of La. R.S. 9:355.13 have been considered and adjudicated, the further litigation of virtually those same factors amounts to a suit for a change of custody and not a suit for relocation, thus implicating the serious concerns of Bergeron. For example, if Gray’s move amounted to 30 miles to the other side of Huntsville, Alabama, has “relocation” occurred, throwing open the courthouse doors for further parental conflict over virtually the same geographical and related concerns that were the subject of the prior judicial conflict and considered decree? Once the first adjudication of relocation allows primary custody with the out-of-state parent and a smaller amount of time spent with the Louisiana parent during the school year, the critical best interest of the child determination is that the child should be with that parent Rfor the greater amount of time. The specific location in Alabama or Kansas is not the linchpin of the ruling.
Not once in the majority’s opinion is it said that this child’s continued custody with Gray will be so deleterious to the child so as to justify the child’s return to Louisiana. Neither was Bergeron’s observation about relocation noted:
There is evidence that more harm is done to children by custody litigations, custody changes, and interparental conflict, than by such factors as the custodial parent’s post divorce amours, remarriage, and residential changes, which more often precipitate custody battles under liberal custody modification rules than conduct that is obviously harmful to the child, such as abuse or serious neglect.
Id. at 1199. Instead, the factors of Article 134 and the relocation statute are now reexamined as though the prior conclusion of a different district judge was a mistake. Most importantly, nothing is said in the trial court’s ruling that found fault with the bond between the primary custodian and his son reflecting badly on Gray’s care. As for the change of schools, the *833 ruling for the child’s return to school in Ruston, as opposed to Bastrop where the child had previously attended school, is no different from the change from Alabama to Kansas.
Likewise, the majority’s opinion makes no comparison with other cases applying Bergeron. The heightened Bergeron standard, requiring proof that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, has been applied to disrupt considered custody arrangements sparingly and reserved for the most egregious offenses. See AEB v. JBE, 99-2668 (La.11/30/99), 752 So.2d 756 (sexual molestation by stepbrother); Howard v. Oden, 44,191 (La.App.2d Cir.2/25/09), 5 So.3d 989, writ denied, 09-0965 (La.6/26/09), 11 So.3d 496 (abuse by parent’s subsequent spouse); Ard v. Ard, 628 So.2d 1221 (La.App. 3d Cir.1993) (punishment methods reflected an insensitivity and lack of awareness of the deepening problems that the children were experiencing and extremely severe “parent bashing”); Hull v. Hull, 542 So.2d 205 (La. App. 3d Cir.1989), writ denied, 546 So.2d 1216 (La.1989) (mother repeatedly giving birth to children out of wedlock in total disregard for the moral well-being of her adolescent children).
Consistent in their approach, courts have been hesitant even in relocation settings to change custody once a considered decree has been entered. Johnson v. Johnson, 93,1015 (La.App. 1st Cir.3/11/94), 634 So.2d 31 (father’s removal of child to another state without notice to mother was not so deleterious as to mandate change in custody); Weems v. Weems, 548 So.2d 108 (La.App. 2d Cir.1989) (evidence that mother had remarried, moved with her children to Texas, and had refused to transfer custody to father during summer months as required by joint custody order was insufficient to warrant amendment of order to make father primary domiciliary parent). See also, Knowlton v. Knowlton, 40,931 (La.App.2d Cir.4/12/03), 927 So.2d 640 (no deleterious circumstances found despite daughter’s disciplinary problems and expressed desire to live with other parent); Rome v. Bruce, 09-155 (LaApp. 5th Cir.10/13/09), 27 So.3d 885 (no cause of action when father’s petition, complaining of child failing kindergarten and first grade and mother living with another man out of |swedlock, did not allege facts so deleterious as to warrant change in custody); Lee v. Lee, 34,025 (La.App.2d Cir.8/25/00), 766 So.2d 723, unit denied, 00-2680 (La.11/13/00), 774 So.2d 150 (despite the fact that mother made significant improvements in her emotional and physical well-being by maintaining steady employment and establishing a stable home, trial court abused its discretion in changing custody when evidence showed children had strong bonds with both parents and children were thriving under current custody arrangement); Plunkett v. Plunkett, 576 So.2d 100 (La.App. 2d Cir.1991) (no modification of considered decree based on divorced wife’s evidence that husband committed adultery).
Having read the lengthy trial court ruling in 2007 when the decision to allow the domiciliary parent to relocate to Alabama was made, I’m convinced that Bergeron requires new judges in 2010 to protect the best interest of the child and allow the established custody to remain stable. Ber-geron was lost in the trial court’s misguided focus on the relocation statute, and I respectfully dissent.