GUIDRY, Justice.*
bin this relocation and custody modification matter, we are called upon to determine whether the trial court or the court of appeal on rehearing correctly applied the criteria governing relocations, La.Rev. Stat. 9:355.1 et seq., to the domiciliary parent’s request to relocate from Alabama to Kansas, and also correctly applied Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), to the non-domiciliary parent’s request for modification of custody.[1] Thus, the issue presented is whether the trial court *1249 abused its discretion, first in denying the father’s request for relocation from Alabama to Kansas, and thereafter in modifying a considered custody decree to award the mother primary domiciliary custody. After applying the statutory criteria listed in La.Rev.Stat. 9:355.12, the trial court determined the father did not meet his |2burden of proving the proposed relocation would be in the best interest of the child.[2] |2The trial court further found the mother had established a material change in circumstances warranting modification of custody, based on the father’s violation of an ex parte order by moving the child to Kansas without court approval, citing La. Rev.Stat. 9:355.11.[3] Alternatively, the trial court found the mother had satisfied her burden of proof under Bergeron to merit a change in domiciliary custody. The court of appeal on rehearing reversed the trial court’s judgment, concluding the trial court abused its discretion in denying the relocation request and modifying custody.
*1250 Upon review, we find the record reflects the trial court abused its discretion in denying the domiciliary parent’s request to relocate. We further find the legislature in enacting La.Rev.Stat. 9:355.11 did not create an exception to the “heavy” burden of proof established by this court in Ber-geron for a party seeking to modify a considered custody decree. Applying the Bergeron standard to the mother’s rule to modify custody, we conclude the trial court erred in granting the mother’s motion to modify custody and awarding her domiciliary custody. For the reasons set forth below, we affirm the judgment of the court of appeal.
FACTS and PROCEDURAL HISTORY
Jason Ted Gray and Christy Lynn Winnow were married in 1999, and their son Jayden was born of the marriage in 2001. Jason and Christy separated in 2005, and pursuant to a consent judgment, the parties were awarded joint custody of Jayden, with Jason designated as the domiciliary parent. Jason and Christy were subsequently [4divorced in October 2005.[4] In March 2007, Jason gave notice of his intent to relocate with Jayden to Alabama to join his then fiancee Jamie Schmidt, now his wife, who had moved there because of her job. Christy filed an objection to the relocation, as well as a rule to modify the domiciliary custody. In October 2007, following a trial, the court approved Jason’s relocation with Jayden to Alabama and denied Christy’s motion to modify custody. The trial judge in extensive oral reasons found the father had proved the relocation was sought in good faith and that it was in the best interest of Jayden to relocate with his father to Alabama from Louisiana. The trial court noted, inter alia, that Christy had not completely recovered from her abuse of prescription drugs. Around November 16, 2007, Jason moved to Alabama with Jayden.[5]
Apparently this judgment of the trial court was not signed until sometime in October 2008, and thereafter on November 25, 2008, Christy filed a devolutive appeal of the trial court’s judgment permitting the relocation to Alabama and denying her rule to change custody. This appeal remained pending in the appellate court when the litigation regarding the father’s subsequent request to relocate from Alabama to Kansas and Christy’s second attempt to modify custody commenced. As the record shows, the pendency of Christy’s appeal affected the subsequent litigation, because the trial court believed it could not go forward if the appeal were still pending. After |fisome delay, due in part to Christy’s intermittent efforts to pursue her appeal, Christy eventually moved to dismiss her appeal, and the appellate court ultimately granted that request on May 29, 2009.
Meanwhile, in early November 2008, Jason provided Christy with notice of a proposed relocation with Jayden from Toney, Alabama, to Springhill, Kansas, about 100 *1251 miles farther in distance from Ruston, Louisiana, because of a job transfer for Jason’s wife (hereinafter, “Jamie”). , In December 2008, Christy filed a timely objection to this proposed relocation.[6] On December 16, 2008, the trial court, with a new judge presiding, set a show cause hearing for March 25, 2009, and prohibited Jason from relocating the child to Kansas pending the hearing on Christy’s rule to show cause.
Thereafter, the parties filed numerous pleadings, the most pertinent of which are hereafter discussed. Jason filed a motion for temporary relocation on January 6, 2009, and Christy filed a rule to modify custody on January 15, 2009, seeking primary domiciliary custody. Jason, however, on or about December 29, 2008, had left Alabama with Jayden. In February 2009, Christy filed a rule for contempt on the grounds Jason had moved to Kansas in violation of a court order. However, at a status conference on January 14, 2009, before the trial judge, the parties discussed various disputes, including Jason’s request for temporary relocation.[7] The parties were apparently in agreement on Jason’s temporary relocation request, with a reservation to Christy to place Jason in contempt if she could show that he had moved in violation of the court’s ex parte order. However, even though Christy’s counsel | (¡proposed at least two interim orders effecting that agreement, no order was then signed, evidently because the parties never reached agreement on portions of the proposed interim order.
A conference before a hearing officer commenced on February 23, 2009. The hearing officer made a number of findings, including: (1) Christy did not meet her burden of proof warranting a change in custody under Bergeron v. Bergeron, as she was essentially reurging her complaints objecting to Jason’s original move to Alabama; (2) Jason could not be held in contempt for relocating the child after January 14, 2009, because there had been an agreement between the parties at the status hearing to permit temporary relocation; (3) Jason should be held in contempt for relocating the child prior to that date, with a fine of $1,000.00 to be imposed; and (4) Jason’s request to relocate from Alabama to Kansas should be denied, because he had not shown it will be in the best interest of the child. Both Jason and Christy filed objections to the hearing officer’s conference report.
At the March 25, 2009 hearing, the trial court declined to adopt the hearing officer’s conference report or issue an interim order, noting the pendency of Christy’s appeal of the original judgment approving Jason’s relocation to Alabama and denying Christy’s rule to change custody. Accordingly, the hearing on the relocation and custody issues was reset to June 1-2, 2009, to allow Christy time to dismiss her appeal. Eventually, on May 11, 2009, the trial court, now confident the appeal would be dismissed, made the recommendations in the hearing officer’s conference report regarding temporary relocation and contempt its interim order, without prejudice to either party.
Finally, with Christy’s appeal now dismissed, a hearing on the relocation request and the rule to modify custody was commenced on June 1, 2009. Months *1252 17after the hearing, on September 10, 2009, the trial court in oral reasons denied the proposed relocation from Alabama to Kansas. Although it found Jason’s request for relocation to be in good faith and that the move would improve the family’s financial circumstances, the trial court reasoned primarily that Jamie’s career advancement would in the future be pursued by Jason and his wife at the expense of Jayden’s opportunity for greater stability in Louisiana. The trial court found no material difference between Alabama and Kansas as it pertained to the child’s well-being, nor did the court find any decline in the child’s relationship with either parent; instead, the trial court found Louisiana would be a better place for the child to be raised given the proximity to extended family. The trial court acknowledged Christy’s failure to take advantage of all her opportunities to visit Jayden in Alabama, Jason’s compliance with all visitation orders, and the mother’s less-advantageous financial situation (she had contributed little, if any, to Jayden’s support and had not pursued gainful employment despite her promises to the original trial judge). Nevertheless, the court reasoned that Jason and his wife will be in a better position financially to support Jay-den’s life with his mother and her new husband in Ruston, Louisiana, where Jay-den would be relatively closer to his grandparents and great-grandmother in Bastrop.[8]
The trial court further found Jason in contempt of court for relocating with Jay-den in violation of the court’s ex parte order.[9] The trial court ordered Jason to return from Kansas to Alabama with Jay-den.
The trial court further ordered a decision on the motion to modify custody be | ^deferred, pending submission of post-trial briefs addressing the application of the standard in Bergeron. Thereafter, on March 1, 2010, the trial court modified the previous custody order, and designated Christy as the domiciliary parent. The trial court first found the Bergeron standard was inapplicable to the facts of this case, because La.Rev.Stat. 9:355.11 provides that the relocation of a party in violation of a court order is a sufficient change in circumstances to warrant modification of custody, even in the face of a considered decree. Specifically, the trial court found that the legislature in enacting La.Rev.Stat. 9:355.11 had carved out an exception to the heavy burden this court established in Bergeron for a party seeking to modify a considered custody decree. The trial court concluded that moving in violation of a court order allowed the court “to modify custody on that change of circumstances in and of itself.” Thereafter, the trial court awarded Christy domiciliary custody, reiterating the advantages to the child of residing in Louisiana the court had previously articulated.
Alternatively, the trial court reasoned that, even if Bergeron were applicable, then Christy satisfied her burden of proving that a change in circumstances materially affecting Jayden’s welfare occurred because the child would be required to move whenever Jamie’s career demanded it, thereby subjugating Jayden’s welfare to his step-mother’s career. The trial court believed the window of opportunity for Jayden to develop relationships with extended family would be lost in the shuffle. *1253 The trial court further believed that Jason would not return permanently to Alabama, but instead would return or remain in Kansas.
The trial court also found that Christy had met her burden of- proof under Berger-on through her rehabilitation from a past drug addiction. The trial court cited Art. 134 of the Louisiana Civil Code, noting it had also considered those factors in | gdetermining that any harm caused by a change of environment would be substantially outweighed by the advantages to Jayden, such as more frequent contact •with his grandparents, who lived in northeast Louisiana.[10] Following that ruling, Jayden was transferred to Christy’s domiciliary custody in Louisiana.
Jason appealed the denial of his request to relocate to Kansas and the award of domiciliary custody to Christy. The court of appeal originally affirmed the trial court judgments, with one judge dissenting. The majority opinion on original hearing found no abuse of the trial court’s discretion in denying the relocation because the record supported the trial court’s determination that the advantages to the child | inresulting from modification of custody, particularly the opportunity for a more stable home and school environment and more frequent contact with grandparents and other family members, substantially outweighed any detriment to the child caused by the reduced financial security in the mother’s household. Furthermore, the majority found no abuse of discretion in modifying the custody order to designate the mother as the domiciliary parent of the minor child.[11] The dissenting judge believed the trial court had focused unduly on the relocation statute rather than correctly hold the mother to the burden of proof required by Bergeron for a change in custody after a considered decree.
On Jason’s application for rehearing, a majority of the five-judge panel granted rehearing and reversed the trial court’s judgment. The majority found the trial court had abused its discretion in denying the move from Alabama to Kansas, reason *1254 ing there was already a court-approved, multi-state custody arrangement and there was no real difference between the Alabama location and the Kansas location, likening it to an intrastate move by a domiciliary parent. The majority noted the jurisprudence has held that “an intrastate move is not per se a material change of circumstances such that a court may presume that it will materially affect the child’s welfare without further evidence.” Major v. Major, 02-2131 (La.App. 1 Cir. 2/14/03), 849 So.2d 547 (citations omitted). The majority further found the additional distance did not amount to a material change in circumstances warranting a change in custody. The majority found no exception in the relocation statutes to the burden of proof this court articulated in Bergeron when a party seeks modification of a considered custody decree. The majority reasoned that the relocation statutes primarily govern an initial Inrequest to relocate out-of-state, citing La.Rev.Stat. 9:355.1(4)(a)[12], and not to any subsequent request for relocation once the initial relocation request has been approved by a court. The majority found the trial court erred in allowing the parties to relitigate the relocation and custody issues previously resolved under La. Rev. Stats. 9:355.12 and 9:355.13.[13] Finally, the majority concluded the trial court erred in awarding Christy domiciliary custody under Berger-on, because Christy had failed to cany her burden of proving that the child’s continued custody with Jason would be so deleterious to the child as to justify a change in custody.
The dissenters believed the trial court had carefully considered the best interest of the child before finding there would be a substantial benefit to the child in residing with his mother in closer proximity to his grandparents and extended family and that there was little likelihood of harm to the child by a change in physical custody. Thus, the dissenters found the trial court’s determination was reasonably supported by the record, which shows that the child’s home environment was disrupted by relo-cations twice within one year and that the child’s education was interrupted by the father’s conduct in moving the child to yet another state in violation of the existing court order.
Christy then applied to this court, seeking a stay order on the ground Jason 112intended to pull Jayden out of school in Louisiana and move him to Kansas immediately. On March 15, 2011, this court granted the stay. We ultimately granted Christy’s writ application to consider the correctness of the lower courts’ rulings. Gray v. Gray, 11-0548 (La.03/30/11), 60 So.3d 1238.
DISCUSSION
This case involves two separate issues, which have come to be somewhat interrelated by the facts presented. The first question is whether the trial court abused its discretion in denying Jason’s request to relocate from Alabama to Kansas under the relocation statutes, La.Rev.Stat. 9:355.1 et seq. The second question is whether the trial court erred in thereafter sustaining Christy’s rule to modify custody *1255 and awarding her domiciliary custody. We will address each issue in turn.
Jason’s Request to Relocate
Louisiana’s relocation statutes, La.Rev. Stat. 9:355.1-9:355.17, govern the relocation of a child’s principal residence to a location outside the state, or, if there is no court order awarding custody, more than 150 miles within the state from the other parent, or, if there is a court order awarding custody, more than 150 miles from the domicile of the primary custodian at the time the custody decree was awarded. Curole v. Curole, 02-1891, p. 4 (La.10/15/02), 828 So.2d 1094, 1096. In adopting these statutes, the Louisiana legislature made a policy determination that relocation is not to be automatically considered as being in the best interest of the child; instead, the parent seeking to relocate the principal residence of the child must prove not only that the request for relocation is made in good faith, but also that the relocation is in the best interest of the child. Id., p. 5, 828 So.2d at 1097; see also La.Rev.Stat. 9:355.13. “In determining the child’s best interest, the court shall consider the benefits which the child will derive either directly or indirectly from an enhancement |iain the relocating parent’s general quality of life.” La.Rev.Stat. 9:355.13. Although La.Rev.Stat. 9:355.12 sets forth the factors the court must consider in determining whether the proposed relocation is in the best interest of the child, see Note 2, supra, there is no requirement that a court give preferential consideration to any factor. See Curole, p. 6, 828 So.2d at 1097. While La.Rev.Stat. 9:355.12 requires the trial court to consider all twelve factors therein, the court’s failure to expressly analyze each factor in its written or oral reasons will not constitute an error of law such that de novo review is appropriate. Gathen v. Gathen, 10-2312, p. 13 (La.5/10/2011), 66 So.3d 1, 9-10. Ultimately, the question on appellate review is whether the trial court, having properly considered all of the factors in La.Rev. Stat. 9:355.12, abused its discretion in determining that the relocation would not be in the child’s best interest. Curole, p. 13, 828 So.2d at 1100; see also Gathen, p. 13, 66 So.3d at 9 (“the trial court’s relocation determination is entitled to great weight and will not be overturned absent a clear showing of abuse of discretion”).
As noted above, Jason had domiciliary custody of Jayden by virtue of a consent judgment when he made his initial request to relocate with Jayden from Louisiana to Alabama. After a trial, the original trial judge granted Jason’s request to relocate, denied Christy’s rule to modify custody, and awarded Jason domiciliary custody. Thus, the trial court’s original custody judgment, as all parties and the subsequent trial judge agree, was a considered custody decree. That custody judgment, along with the judgment granting Jason’s request to relocate to Alabama, ultimately became final when Christy’s appeal was dismissed in May 2009. Thus, there was a final judgment in effect when the subsequent trial judge eventually ruled both on Jason’s request to relocate from Alabama to Kansas and on Christy’s second rule to modify custody.
114With regard to the relocation request itself, the courts below were faced with the question of what standard applies to a relocation request to move from one out-of-state location — a location that had been previously approved in a considered judgment — to a different out-of-state location. The trial court seemingly reviewed the relocation factors set forth in La.Rev.Stat. 9:355.12 as if it were considering the merits of all three locations de novo: the original location of Louisiana, which the mother argued was always in the best interest of the child; the second location in Alabama, which had previously been approved by the court in a judgment that was now final; *1256 and the requested new location in Kansas, which the father argued would be in the best interest of the child given the improvement to the family’s financial well-being. The court of appeal on rehearing equated the move from one out-of-state location to another out-of-state location with certain intrastate relocations, at least with respect to such a move’s impact on continued custody. The parties’ arguments primarily center on the custody modification judgment, and what impact a relocation request might have on a change in custody. Nevertheless, Jason has argued the trial court should have analyzed the Kansas location in light of the previously-approved Alabama location. Christy has maintained the trial court correctly considered the factors enumerated in La. Rev.Stat. 9:355.12 and the best interest of the child in deciding not to approve Jason’s relocation request, including making credibility assessments and determining the weight to give the evidence presented. Christy asserts the court of appeal on rehearing improperly imposed a Bergeron-like requirement on a subsequent relocation request, when no such requirement is set forth in the statutes.
While we do not equate every out-of-state to out-of-state relocation as equivalent to an intrastate move, whatever the distance, nor do we find that La.RevjStat.16 9:355.1 et seq. applies only to initial out-of-state relocation requests, we find the trial court erred in effectively allowing Christy to relitigate the original trial court’s approval of the relocation from Louisiana to Alabama under the facts and procedural posture of this case. As the trial court itself recognized, there was little or no material difference between the requested location of Kansas and the previously-approved location of Alabama. The trial court acknowledged that the approximately 100-mile difference in distance from Louisiana was of little moment with regard to the existing visitation schedule. Indeed, as the trial court noted, the record shows the mother had visited the child in Alabama on only two occasions, February and September 2008, despite other opportunities to do so in the visitation schedule, and that the father satisfied his obligations at all times with regard to transporting Jay-den to meet his mother or to Louisiana. Further, the trial court found the relocation to Kansas was requested in good faith and would further the family’s overall well-being, given Jamie’s increased career opportunities. The trial court also acknowledged that Jayden would derive substantial benefits “either directly or indirectly from an enhancement in the relocating parent’s general quality of life.” La.Rev. Stat. 9:355.13. Further, the trial court observed that Christy was less financially able to support Jayden than Jason and Jamie, and Christy had in fact never contributed substantially to Jayden’s support, though Jason had never requested that she do so.
Although the court acknowledged the relocation to Kansas would provide definite advantages to the family, it is clear from the trial court’s reasoning in denying the relocation that the court was focused almost solely on Jason’s wife’s future career choices and Jayden’s potentially-stronger relationships with his grandparents if he lived in Louisiana, rather than on preserving Jayden’s relationship with his father and step-mother, who had been Jayden’s primary caretakers. The court, though duly | ^concerned about the stability of the family unit, given the multiple marriages of Jason, Christy, and Mr. Bruner, essentially engaged in speculation about career changes and residential moves Jason and Jamie might next make, even opining that the couple was likely to move again once the litigation ceased and that such moves could cause Jayden to lose touch with his grandparents in Louisiana.
*1257 Despite Christy’s arguments to that end, the court specifically declined to make a finding that Jamie was not credible with regard to her employment future, either at the hearing in 2007 or the hearing in 2009. Much is made in the briefs about whether Jamie truthfully testified as to the nature of her original position in Alabama, and whether such position was really a permanent position or merely part of a “pilot program.” It is clear from the testimony of both Jamie and her employer that the position in Alabama was ultimately terminated by the company. Jamie, an area sales manager for John Deere Credit, was positioned in Alabama within a large agricultural dealer. Jamie explained that, though the initial position was a new approach for the company, she had hoped to become the territory manager for John Deere in Alabama. However, the then territory manager was transferred elsewhere, and Jamie did not have sufficient experience to qualify for the position at that time. With her position in Alabama being eliminated, Jamie was given the option of transferring to Kansas. Although she and Jason explored staying in Alabama, in light of the deteriorating economy and fewer options in Alabama, they opted for Kansas, because, as Jamie explained, there would be more opportunities for promotions and inside work with John Deere in Kansas. She pointed out that her supervisor there had been in his position for over nine years, and that she hoped to expand their family by having more children. Jamie explained that the Atlanta position that was mentioned as an alternative in the notice of relocation, written either by Louisiana or Alabama |17eounsel, came available after she had accepted the transfer to Kansas but before she had actually moved. She explained that Atlanta was less advantageous for a number of reasons, including a bigger urban area and being further from Louisiana, but more importantly, changing her mind about Kansas would be seen in a negative light by the company. On repeated questioning, Jamie insisted she had planned to stay in Alabama for a significant period, five years plus, as she had testified in 2007. When asked why she did not describe the position as a “pilot program,” she explained that no one had asked her that question, and reiterated her intent was to ultimately assume the territory manager position in Alabama regardless of her initial sales position.
The trial court faulted the failure of Jamie and Jason to remain in Alabama, but Jamie’s decision to remain with her company, albeit in a different location, should be judged in light of the deteriorating economy in late 2007 and 2008. Moreover, not mentioned by the court is the fact that Jamie had in fact purchased a home in Alabama, which certainly demonstrated her intent to remain there for a significant period of time, as she testified in 2007. The record also shows that Jason and Jamie have purchased a home in Springhill, Kansas, which also supports their testimony that they intend to reside in Kansas. Notwithstanding this evidence, the trial court speculated the couple would not hesitate to relocate again in the future should Jamie’s job require given Jamie’s moves prior to her marriage to Jason. But Jamie explained that she was moved more often by the company when she was single and, in one instance, moved temporarily to take over another sales manager’s position in Texas when he was deployed overseas. We cannot discern from this record any support for the trial court’s speculation that Jamie and Jason will move again once the litigation has ceased. Although the trial court in determining the best interests of the child in light of La. Rev.Stat. 9:355.12 is not restricted to the guidelines enumerated therein, |1Rwe do not consider conjecture (especially that which is unsupported by the facts of the *1258 case) to be an appropriate consideration in determining the best interest of the child.
Ultimately, our review of the record under the guidelines set forth in La.Rev.Stat. 9:355.12 establishes that the trial court abused its discretion in finding that Jason did not carry his burden of proving the relocation from Alabama to Kansas was requested in good faith and would be in the best interest of the child. The trial court obviously believed that Louisiana would be a better location for Jayden, when compared to either Alabama or Kansas, mainly because of the opportunity to develop relationships with the grandparents who lived in the Bastrop area. However, the relocation from Louisiana to Alabama had already been approved in a now-final judgment and, therefore, the only ruling the trial court was called upon to make was whether Jason should be allowed to move with Jayden from Alabama to Kansas. Indeed, the trial court could not have ordered Jason to return to Louisiana, but could only deny Jason’s request to relocate to Kansas and order him to return with Jayden to Alabama, a location the trial court had clearly found was not materially different from Kansas and which posed no lesser hardships on the mother, nor provided more advantages to the child, than the newly requested location of Kansas. Indeed, there was no dispute that Jamie’s new position in Kansas would in fact benefit the family as a whole, while Christy would be unable to support Jayden in Louisiana without financial assistance from Jason and Jamie. In effect, the trial court’s relocation determination, rather than preserve or foster the mother’s relationship with the child, or even do so with respect to the grandparents in Louisiana, instead forced the child’s primary caretaker, his father, to return to Alabama, a state to which neither parent had |i9or retained any substantial ties.[14]
We expressly do not conclude that a subsequent relocation request from one out-of-state location to another will or should always be approved, as such a determination will inevitably depend on the individual circumstances of each case that the trial court must evaluate to determine the best interests of the child in light of the appropriate guidelines set forth in La. Rev.Stat. 9:355.12. See Curole; Gathen. Nevertheless, we find that under the particular facts and procedural posture of this case, the trial court clearly abused its discretion in denying the father’s request to relocate from Alabama to Kansas.
Christy’s Rule to Modify Custody
Louisiana Civil Code Article 131 provides that “[i]n a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child.” Article 131 applies in actions to change custody as well as in those to initially set it. AEB v. JBE, 99-2668, p. 7 (La.11/30/99), 752 So.2d 756, 761; La. Civ.Code art. 131, comment (d). When a party seeks to change custody rendered in a considered decree, the proponent of change not only must show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody, but he or she also “bears the heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody de *1259 cree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.” Bergeron, 492 So.2d at |2q1200; see also AEB v. JBE, 99-2668, p. 7, 752 So.2d at 761; Evans v. Lungrin, 97-0541, pp. 12-13 (La.2/6/98), 708 So.2d 731, 738. This burden of proof is imposed as a means of implementing the best interest standard in light of the special considerations present in change of custody cases. AEB v. JBE, 99-2668, p. 7, 752 So.2d at 761. The determination of the trial court in child custody matters is entitled to great weight, and its discretion will not be disturbed on review in the absence of a clear showing of abuse. Bergeron, 492 So.2d at 1196.
Given our finding that the trial court abused its discretion in denying Jason’s request to relocate from Alabama to Kansas, we turn to the question of whether the trial court also abused its discretion in granting Christy’s rule to change custody and awarding her domiciliary custody. Because the request to relocate should not have been denied, the only identified bases for Christy’s claim that a change in circumstances has occurred which materially affects the child’s well-being so as to warrant a change in custody are Jason’s violation of the trial court’s ex parte order to remain in Alabama and/or Christy’s rehabilitation from drug use. We find that La.Rev.Stat. 9:355.11 does not create an exception to the Bergeron requirements and, furthermore, that none of these asserted changes in circumstances meets the threshold of Bergeron to warrant the trial court’s modification of a considered custody decree.
As stated above, the trial court found that La.Rev.Stat. 9:355.11 provides an exception to the “heavy” burden of proof required of a party seeking to modify a considered custody decree set forth in Ber-geron. Based on its prior finding that Jason had violated the ex parte order to remain in Alabama and its finding that Jayden living in Louisiana nearer his relatives would be in his best interest, the trial court granted Christy’s rule to modify custody and awarded her domiciliary custody. As noted above, the court believed Jason’s violation of the ex parte order, even though | ¾, he was later given permission to temporarily relocate to Kansas, “in and of itself’ allowed the court to modify custody, even custody awarded through a considered decree, without regard to the Berger-on standard.
In finding an exception to Bergeron in La.Rev.Stat. 9:355.11, the trial court believed the rationale of Rao v. Rao, 05-1523 (La.App. 1 Cir. 11/4/05), 927 So.2d 391, writ denied, 04-1011 (La.6/18/04), 876 So.2d 809, to be the most persuasive authority. In Rao, the court of appeal, relying on this court’s decision in Curóle, held that Bergeron was not applicable to the special limited circumstances of parent relocation, a subject specifically addressed by the legislature in La.Rev.Stat. 9:355.1, et seq. Rao went on to say that, to the extent Bergeron might somehow be applicable to a relocation request and a concurrent modification of custody, its double-burden standards are inherent within the statutory factors. The trial court in the instant case noted that Bergeron was decided in 1986, and the legislature obviously was familiar with the decision when it enacted the relocation law in 1997 and amended it in 2003; thus, the trial court believed the legislature intended the relocation act to govern any and all contested relocations.
We disagree that the legislature in La. Rev.Stat. 9:355.11 set forth an exception to the Bergeron standard for a party seeking to modify a considered custody decree. La.Rev.Stat. 9:355.11 provides that “[m]ov-ing without prior notice or moving in viola *1260 tion of a court order may constitute a change of circumstances warranting a modification of custody.” (Emphasis supplied.) We do not discern in this permissive language any intention on the part of the legislature to abrogate the well-accepted Bergeron standard for modification of a considered custody decree even in the context of a relocation, nor has any party directed us to legislative history that would support such a finding. The appellate court in Rao made no such broad | ^holding, in our view, and, moreover, the Rao case is distinguishable on its facts. In Rao, the request for relocation was an initial request by the mother to relocate to Florida from Louisiana, both parents had physical custody of the children at the time of the request pursuant to a consent judgment, and the relocation necessarily entailed a change in physical custody were the relocation to be approved by the court. Thus, Bergeron was not necessarily implicated in Rao. Here, Jason had domiciliary custody pursuant to a considered custody decree, the request to relocate out-of-state to Alabama had been approved by the court and was a final judgment, and the request to relocate to Kansas was not an initial relocation request. Given the extensive history and reasoning set forth in Bergeron for adopting a stricter burden of proof in custody modification cases, we see no reason to retreat from the heightened Bergeron standard when a party seeks to modify a considered custody decree even in the context of a request for relocation.
Moreover, we find the trial court abused its discretion in determining that Jason’s violation of the ex parte order in this case and Christy’s claimed rehabilitation from drug use constituted changes in circumstances that materially affected Jayden’s well-being so as to warrant a change in custody under the Bergeron standard. It has been explained that the “heart of the Bergeron heavy-burden rule is the concern that a child’s best interest and welfare could be irreparably damaged by mistaken changes in custody or even by the effects of an attempted or threatened change of custody on grounds that are less than imperative.” Johnson v. Johnson, 93-1015 (La.App. 1 Cir. 3/11/94), 634 So.2d 31, 33 (citing Bergeron and Blakesley, Louisiana Family Law, § 12.39 (1993)). The party seeking a change in custody, therefore, must produce sufficient evidence to support a finding that the claimed change in circumstances has adversely affected the child. Smith v. Smith, 615 So.2d 926 (La. App. 1st Cir.), writ denied, 617 So.2d 916 (La.1993).
With respect to the father’s violation of the ex parte order in this case, we do not find that Christy has shown that the unauthorized relocation of Jayden in December 2008 to Kansas from Alabama materially affected Jayden’s well-being or interfered with visitation. Further, there is no evidence that the relocation in violation of the ex parte order had a detrimental effect upon Jayden or his relationship with his mother, such that it would be so deleterious to the child as to justify a modification of the custody decree. The father had already been approved to relocate from Louisiana to Alabama; the relocation did not upset or thwart the visitation schedule with the mother; the child was not abducted or surreptitiously relocated, as the mother was given notice of the move by Jason both verbally and in writing well before the child was moved to Kansas; the child was not relocated to a location much different in distance from the mother’s residence in Louisiana when compared to the court-approved Alabama location; there was no established ill-motive on the part of the father in violating the order; and the parties soon thereafter agreed to the temporary relocation, even if an interim order to that effect was delayed *1261 in being signed by the trial court.[15] “Custody should not be changed when to do so would punish a parent for past behavior when there is no proof of a detrimental effect on the child[].” Smith v. Smith, 615 So.2d at 934. After carefully considering the evidence and the facts of this case, we find the record does not support the trial court’s finding that Jason’s 124violation of the court order constituted a change in circumstances that materially affected Jay-deris well-being such that continuation of Jason’s domiciliary custody would be so deleterious to Jayden to warrant a change in custody.[16]
As for Christy’s rehabilitation from prior drug usage, the parties dispute the extent to which the original trial court had weighed Christy’s drug use and her failure *1262 to rehabilitate herself before it approved the relocation to Alabama, denied Christy’s first rule to modify custody, and awarded Jason domiciliary custody. While it was clear that Christy’s drug use was indeed a factor considered by the trial court, it was not the sole basis for the court’s award of domiciliary custody. The original trial court gave lengthy reasons for its award of domiciliary custody to Jason in the face of Christy’s rule to modify custody. That Christy now claims to be completely 1 ^rehabilitated is not such a material change by itself as to find that continued custody with the father would be so deleterious to the child, nor does it rise to clear and convincing proof that the advantages of awarding Christy domiciliary custody would be outweighed by any harm as a result of the change in custody.
Instead, as it did in denying Jason’s relocation request, the trial court here focused again on Jamie’s possible future career changes and on the likely benefit to Jayden if he were to live closer to his grandparents in Louisiana, rather than on the strict requirements of Bergeron. The trial court made no finding that continuation of Jason’s custody of Jayden would be so deleterious to the child as to justify modification of the custody decree in favor of Christy. Indeed, the record would not support such a finding, as there was no evidence that Jason had anything other than a positive and loving relationship with his son, and that Jayden was thriving under the primary care of Jason and Jamie both in Alabama and Kansas. The trial court found no evidence that Jason had thwarted or undermined Jayden’s relationship with his mother, but he had instead complied with his obligations under the visitation schedule. Furthermore, the trial court made no finding that Jayden did not have, or could not have, a meaningful relationship with his grandparents were he to remain with his father in Kansas. The trial court simply opined that, were either Jason and Jamie or Christy and her husband to divorce, Jayden would have more support in dealing with such a break-up if he were living nearer his grandparents. However, there was no evidence in the record that either couple had marital problems, but there was evidence that Jayden was able to visit with his grandparents and spend quality time with them throughout the year.[17]
12fiLikewise, the trial court did not, and could not on the record before us, determine that Christy had shown by clear and convincing evidence that the harm likely to be caused by a change in Jayden’s environment to live with Christy in Louisiana would be substantially outweighed by its advantages to the child. Although the trial court cited Jamie’s career path as a negative, it conversely noted that Jamie and Jason, because Jamie’s job enabled them to do so, would be required to support Jayden financially were he to live with *1263 Christy in Louisiana. The only cited advantage to a change in custody was the proximity of the grandparents should either couple divorce. As we explained in Bergeron, “in a narrow class of cases a modification of custody may be in the child’s best interest even though the moving party is unable to show that the present custody is deleterious to the child. However, in order to protect children from the detrimental effects of too liberal standards in custody change cases, the burden of proof should be heavy and the showing of overall or net benefit must be clear.” 492 So.2d at 1200. Christy has failed to make such a clear showing in this case.
In Bergeron, we cited the need for “strict standards that set clear boundaries for modification actions,” and recognized that “more harm is done to children by custody litigation, custody changes, and in-terparental conflict, than by such factors as the custodial parent’s post divorce amours, remarriage, and residential changes, which more often precipitate custody battles under liberal custody modification rules than conduct that is obviously harmful to the child, such as abuse or serious neglect, which ^justifies intervention to protect the child.... ” 492 So.2d at 1199. In this case, we do not believe that Christy has carried her “heavy” burden of proof required to justify a modification of the considered custody decree issued in October 2007 awarding Jason domiciliary custody. Accordingly, we find the trial court abused its discretion in granting Christy’s rule to modify custody.
CONCLUSION
Upon our review of the record, we find the trial court clearly abused its discretion in denying the domiciliary parent’s request under La.Rev.Stat. 9:355.1 et seq. to relocate from Alabama to Kansas, and similarly erred in granting the mother’s rule to modify custody and awarding her domiciliary custody. The trial court further erred in finding that La.Rev.Stat. 9:355.11 creates an exception to the requirements set forth in Bergeron for modification of a considered custody decree. Accordingly, for the reasons given above, we affirm the result of the judgment of the court of appeal. The stay previously issued by this court is now lifted. The matter is remanded to the trial court, which is directed to issue the appropriate orders consistent with this opinion to transfer domiciliary custody to the father and to establish a visitation schedule.
DECREE
AFFIRMED, STAY LIFTED, AND REMANDED TO THE DISTRICT COURT.
JOHNSON, Justice, concurs in result.

 Retired Judge Patrick M. Schott, assigned as Justice ad hoc, sitting for Justice Marcus R. Clark, recused.

. This court in Bergeron set forth criteria for modification of custody when the award at issue is a considered custody decree:
*1249 When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.
Bergeron, 492 So.2d at 1200.

. La.Rev.Stat. 9:355.12 provides:
A. In reaching its decision regarding a proposed relocation, the court shall consider the following factors:
(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child’s life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child’s physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child's preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8) The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.
(9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.
(10) The feasibility of a relocation by the objecting parent.
(11) Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.
(12) Any other factors affecting the best interest of the child.
B. The court may not consider whether or not the person seeking relocation of the child will relocate without the child if relocation is denied or whether or not the person opposing relocation will also relocate if relocation is allowed.

. La.Rev.Stat. 9:355.11 provides:
Providing notice of a proposed relocation of a child shall not constitute a change of circumstance warranting a change of custody. Moving without prior notice or moving in violation of a court order may constitute a change of circumstances warranting a modification of custody.

. Christy married Stephen Flowers in March 2006, and separated in April 2006; her divorce from Mr. Flowers became final in June 2007. She then married Lloyd Bruner on November 19, 2007, and thereafter moved from the Bastrop area to his home in Ruston, where she resides with Mr. Bruner and one of his sons. Christy is referred to as Christy Bruner in the record.

. The visitation schedule provided that Christy would have Jayden during the summer commencing on June 1st, with Jason to have him one week both in June and July. Jason would provide all necessary transportation. Christy would also have Jayden one weekend a month, with Jason to provide transportation to Christy's house in Louisiana. Christy also had a second weekend each month, but those weekends she was required to make the travel arrangements. With regard to holidays, the parents alternated those, with exchanges to be made at a halfway point between their residences.

. Jason filed notice of relocation in both Louisiana and Alabama. Christy filed an objection in both states. Eventually, after the courts in both states communicated with each other, the Alabama court declined to exercise jurisdiction over the matter. The jurisdiction issue resulted in some confusion and delay for the parties and the Louisiana court.

. There is apparently no transcript of this proceeding in the record, but both counsel and the trial court later memorialized their recollections of the hearing.

. The trial court recognized Jason's wife Jamie as the primary breadwinner in Jayden’s life, although Jason had undertaken a career change himself selling insurance and Mr. Bruner had steady employment as a high school teacher.

. The trial court allowed that Jason could purge himself of the contempt by complying with all future orders of the court regarding custody. There is no indication in the record that Jason has failed to comply with any subsequent court orders.

. Art. 134, entitled "Factors in determining child’s best interest,” provides as follows:
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.

. The majority on original hearing, noting that the trial court had also considered Ber-geron in determining the custody issue, pre-termitted discussion of the issue of whether La.Rev.Stat. 9:355.11 constitutes a statutory exception to the burden of proof required for modification of a considered custody decree under Bergeron.

. La.Rev.Stat. 9:355. l(4)(a) provides:
(4) “Relocation” means:
(a) Intent to establish legal residence with the child at any location outside of the state.

. La.Rev.Stat. 9:355.13 provides:
The relocating parent has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child. In determining the child’s best interest, the court shall consider the benefits which the child will derive either directly or indirectly from an enhancement in the relocating parent's general quality of life.

. The testimony of Christy’s parents, who both worked, and of her grandmother revealed that their contacts with Jayden were reduced after the original trial court approved the relocation to Alabama, though they did see Jayden whenever Christy would take him to Bastrop from Ruston during her visits with Jayden. There was no testimony, however, that the relocation to Kansas would be any different in that regard. Notably, these witnesses described their frequent contacts with Jayden while he was a toddler, rather than after he had entered school.

. Jason explained that Christy's objection filed in Louisiana, which did include an ex parte order prohibiting him from relocating from Alabama, arrived on December 29, 2008, the same day the movers were packing up his and Jamie’s belongings in Alabama. Although Christy had indicated she was against the move in her telephone conversation with Jason on November 8, 2008, Jason stated he was unsure of which court, Louisiana or Alabama, had jurisdiction, and the Alabama court had not issued an order prohibiting relocation. Jason did concede he did not formally withdraw Jason from school in Alabama or place him in the school in Kansas until his attorney informed him of the agreement of the parties to the temporary relocation on January 14, 2009, a couple weeks after school had recommenced in either jurisdiction following the holiday break. Nonetheless, it was not seriously disputed that Jason had effectively relocated with Jay-den before he filed his motion for temporary relocation and the parties had agreed to such a temporary move.

. The Bergeron standard, requiring proof that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, has been applied to upset considered custody arrangements sparingly, as one of the opinions below observed, and is reserved for the most egregious offenses. See AEB v. JBE, 99-2668 (La. 11/30/99), 752 So.2d 756 (sexual molestation by stepbrother); Howard v. Oden, 44,191 (La.App. 2 Cir. 2/25/09), 5 So.3d 989, writ denied, 09-0965 (La.6/26/09), 11 So.3d 496 (abuse by parent’s subsequent spouse); Ard v. Ard, 628 So.2d 1221 (La.App. 3d Cir.1993) (punishment methods reflected an insensitivity and lack of awareness of the deepening problems that the children were experiencing and extremely severe "parent bashing”); Hull v. Hull, 542 So.2d 205 (La.App. 3d Cir. 1989), writ denied, 546 So.2d 1216 (La.1989) (mother repeatedly giving birth to children out of wedlock in total disregard for the moral well-being of her adolescent children).
As detailed by one of the opinions below, our courts have wisely been hesitant even in relocation settings to change custody once a considered decree has been entered. See Johnson v. Johnson, 93,1015 (La.App. 1 Cir. 3/11/94), 634 So.2d 31 (father’s removal of child to another state without notice to mother was not so deleterious as to mandate change in custody); Weems v. Weems, 548 So.2d 108 (La.App. 2d Cir.1989) (evidence that mother had remarried, moved with her children to Texas, and had refused to transfer custody to father during summer months as required by joint custody order was insufficient to warrant amendment of order to make father primary domiciliary parent). See also Knowlton v. Knowlton, 40,931 (La.App. 2 Cir. 4/12/06), 927 So.2d 640 (no deleterious circumstances found despite daughter’s disciplinary problems and expressed desire to live with other parent); Rome v. Bruce, 09-155 (La.App. 5 Cir. 10/13/09), 27 So.3d 885 (no cause of action when father’s petition, complaining of child failing kindergarten and first grade and mother living with another man out of wedlock, did not allege facts so deleterious as to warrant change in custody); Lee v. Lee, 34,025 (La.App. 2 Cir. 8/25/00), 766 So.2d 723, writ denied, 00-2680 (La. 11/13/00), 774 So.2d 150 (despite the fact that mother made significant improvements in her emotional and physical well-being by maintaining steady employment and establishing a stable home, trial court abused its discretion in changing custody when evidence showed children had strong bonds with both parents and children were thriving under current custody arrangement); Plunkett v. Plunkett, 576 So.2d 100 (La.App. 2d Cir.1991) (no modification of considered decree based on divorced wife’s evidence that husband committed adultery).

. It was primarily Christy’s grandmother, "Babaw,” who had a close relationship with Jayden, and the trial court cited the grandmother’s age, 81, as a concern. Notably, there was no testimony that Jayden could not spend quality time with his grandparents or great-grandmother under the current visitation arrangement. Christy's mother acknowledged that they saw Jayden less often in part because Christy wanted to keep Jayden to herself when he was visiting her. Often, they only saw Christy and Jayden in Monroe, when Christy would meet her mother between Ru-ston and Bastrop to give her Avon products Christy sold to relatives and friends in Bas-trop.
Christy sought more visitation, too. In her testimony, Christy stated she wanted every three-day weekend/holiday during the school year, all other holidays, except Christmas, which would be alternated, and to get Jayden the day after school ends for the summer, rather than on June 1. Christy had no complaints about how Jason and Jamie were raising Jayden.