STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-847


CAROL J. AYMOND, JR.

VERSUS

VALENTINA AYMOND


**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2011-7451B/O
HONORABLE RONALD D. COX, DISTRICT JUDGE, AD HOC

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of John D. Saunders, Marc T. Amy, and D. Kent Savoie, Judges.


**AFFIRMED.**


**Keith W. Manuel**
**115 East Ogden Street**
**Marksville, LA   71351**
**(318) 253-5126**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Carol J. Aymond, Jr.**

**Cory P. Roy**
**Roy & Scott, Attorneys at Law**
**107 North Washington Street**
**Post Office Box 544**
**Marksville, LA   71351**
**(318) 240-7800**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Carol J. Aymond, Jr.**

**Randall M. Guidry**
**Durio, McGoffin, Stagg & Ackermann**
**Post Office Box 51308**
**Lafayette, LA   70505-1308**
**(337) 233-0300**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Valentina Aymond**

**AMY, Judge.**

The appellant sought additional designation as domiciliary parent as well as additional physical custody of the parties' minor daughter. Although the trial court changed some aspects of the underlying physical custody agreement, the trial court denied the appellant's request for additional time with the child. The trial court further denied the request for a change in the domiciliary parent designation. Following review on appeal, we affirm.

### Factual and Procedural Background

Carol Aymond, Jr. and Valentina Aymond were divorced in 2013. In May 2013, the trial court signed a consent judgment regarding the custody arrangement for the couple's minor child, born in June 2011. The judgment provided for shared custody,[1] and designated Mr. Aymond as the "primary domiciliary parent" for certain delineated responsibilities, but designated that "the parties shall be co-domiciliary parents of the minor child."

However, both parties sought modification of the consent judgment due to their respective concerns. The trial court set the matters for hearing and, by considered decree of September 2013, the trial court denied Mr. Aymond's request for additional physical custody time as well as his request for designation as the domiciliary parent. However, the trial court granted Ms. Aymond's request for a modification to the holiday schedule. Additionally, finding that a modification of custody was in the best interest of the minor child and that there had been a material change in circumstances affecting the minor, the trial court designated Ms.

---

[1] The May 20, 2013 judgment provided for each parent to exercise custody "two (2) week nights and every other three day weekend[.]" The judgment also designated a holiday schedule.

Aymond "as the principal domiciliary parent" for all decisions concerning the child.

In November 2015, the trial court revisited the physical custody arrangement and ultimately signed a consent judgment. The resulting judgment again reflected a joint custody arrangement, with the minor child residing with Ms. Aymond on weekdays during the school year and Mr. Aymond having physical custody every other weekend[2] and on Wednesday nights. However, during the summer, the schedule provided Mr. Aymond with physical custody from "noon on the Monday following dismissal of school until noon the Friday before the school commences in the fall." Ms. Aymond was to exercise physical custody every other weekend during that period. Additionally, and maintaining Ms. Aymond's status as the domiciliary parent, the consent judgment required the parties to share "[a]ll decision-making concerning the child[,]" but that "final decision in the event of a conflict shall be made by the mother during the school year and the father in the summer, except for major medical decisions."

However, with continued friction between the parties, Mr. Aymond filed a Rule for Contempt, Attorneys Fees, Court Costs, To Limit And/Or Restrict Visitation And Other Remedies in December 2016. He alleged, in pertinent part, that Ms. Aymond repeatedly refused to deliver the child for the exercise of his physical custody as prescribed by the November 2015 consent judgment. He sought modification of the November 2015 judgment "for the best interest of the minor child concerning supervised visitation, enforcement of right of first refusal and changes in visitation as the Court deems appropriate."

---

[2] The consent judgment defined the weekend periods during the school year "Friday until the dismissal of school for the day until the commencement of school on the following Monday."

2

Before that matter was heard, however, Mr. Aymond further filed a Motion for Evaluation by Mental Health Professional, alleging that Ms. Aymond's "behavior [had] become increasingly erratic and bizarre[.]" Therein, he sought the appointment of the parish coroner "or whoever the Coroner sees fit to evaluate" Ms. Aymond, as well as himself and any other person deemed appropriate, "and/or review any previous medical records and/or previous evaluation for any mental health infirmities – the same being relative to this ongoing custody litigation." However, the trial court denied Mr. Aymond's motion by an April 19, 2017 order.

Thereafter, at an April 21, 2017 hearing, the trial court considered Mr. Aymond's request for a change of custody arrangement as well as various pending motions. While the trial court largely maintained the physical custody schedule, the resulting judgment provided Mr. Aymond with "additional visitation rights . . . every other week of his off-week visits for three (3) continuous hours from when [he] picks the minor child up from school until he returns her at 6:00 p.m. when the parties exchange the minor child at Wal-Mart[.]" The trial court further altered the summer schedule so that each parent would exercise physical custody "on a seven-seven basis[.]" The judgment additionally provided each parent with "the right to take the minor child on vacation within the continental United States, said vacation time not to exceed a ten (10) day continuous period."

Mr. Aymond appeals, asserting that:

1. The Honorable Trial Court erred in denying Mr. Aymond's request for a mental health evaluation of Ms. Aymond.

2. The Honorable Trial Court erred in excluding from evidence the prior medical records of Ms. Aymond.

3. The Honorable Trial Court erred in denying Mr. Aymond's request for domiciliary parent status.

3

4. The Honorable Trial Court erred in denying Mr. Aymond's request for shared or equal physical custodial time of the parties' minor child.

**Discussion**

*Mental Health Evaluation*

Mr. Aymond first challenges the trial court's denial of his request for a mental health evaluation of Ms. Aymond. He references text messages from Ms. Aymond which he contends contained "disturbing content" warranting such an evaluation.

Louisiana Revised Statutes 9:331 provides as follows regarding a trial court's order of a mental health evaluation within the context of a custody proceedings:

> A. The court may order an evaluation of a party or the child in a custody or visitation proceeding for good cause shown. The evaluation shall be made by a mental health professional selected by the parties or by the court. The court may render judgment for costs of the evaluation, or any part thereof, against any party or parties, as it may consider equitable.
>
> B. The court may order a party or the child to submit to and cooperate in the evaluation, testing, or interview by the mental health professional. The mental health professional shall provide the court and the parties with a written report. The mental health professional shall serve as the witness of the court, subject to cross-examination by a party.

As explained in *Cerwonka v. Baker*, 06-856, p. 9 (La.App. 3 Cir. 11/2/06), 942 So.2d 747, 754, "[t]he language of the statute is permissive, and the decision to require the evaluations lies in the discretion of the court." *See also C.M.J. v. L.M.C.,* 14-1119 (La. 10/15/14), 156 So.3d 16 (wherein the supreme court noted the statute's use of the term "may" and addressed the trial court's discretion in whether to order a sexual abuse evaluation given an underlying allegation of abuse).

4

After review of the record in its entirety, we find no abuse of discretion in the trial court's denial of Mr. Aymond's request for an evaluation pursuant to La.R.S. 9:331. Notably, the trial court was aware of each party's allegations as to the conduct of the other party during the multi-year course of these proceedings. That record includes information regarding Ms. Aymond's past mental health and, in fact, mental health professionals evaluated the parties during these proceedings. With that information in hand, as well as the larger history of conflict between the parties, the trial court ordered that Ms. Aymond serve as the domiciliary parent in the considered decree of 2013 and then maintained that status. While Mr. Aymond presented text messages exchanged between the parties and suggested that they reflected instability on the part of Ms. Aymond, the trial court was able to review those messages and evaluate the merit of his allegation given the history of difficulties in this case. Accordingly, we find no abuse of discretion in the trial court's denial of Mr. Aymond's motion.

This assignment or error lacks merit.

*Prior Medical Records*

Mr. Aymond similarly argues that the trial court erred in excluding certain of Ms. Aymond's medical records from the custody hearing. In particular, Mr. Aymond sought the introduction of records from Bunkie General Hospital and two facilities where she was treated for mental health and substance-related issues. Mr. Aymond argues that the records reflected Ms. Aymond's mental health history and were important insofar as he was required to satisfy the standard of *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986) to prove his claim for change of custody. He suggested that the medical records, which he introduced as proffered exhibits, provided a foundation for the above-discussed text messages.

5

In excluding the medical records, the trial court determined that the records—some of which pre-dated the child's 2011 birth—were irrelevant as "we've already had a custody hearing in 2013[.]" As above, review of these proceedings reveals no abuse of the trial court's discretion in its exclusion of the records. *See Medine v. Roniger*, 03-3436, p. 6 (La. 7/2/04), 879 So.2d 706, 711 (wherein the supreme court explained that: "Generally, a district court is afforded great discretion concerning the admission of evidence at trial, and its decision to admit or exclude evidence may not be reversed on appeal in the absence of an abuse of that discretion."). As noted above, the trial court was well-versed in Ms. Aymond's background, having presided over the hearing that resulted in the September 2013 considered decree. Yet, Mr. Aymond sought the introduction of medical records that predated the initial custody hearing and, as mentioned by the trial court, some of which predated the child's birth.

For these reasons, we leave the trial court's ruling undisturbed insofar as it determined that those historic records were not relevant to the present matter.

This assignment lacks merits.

*Domiciliary Status*

Moving from the underlying evidentiary matters, Mr. Aymond next argues that the trial court erred in rejecting his request that he be named domiciliary parent. He suggests that the texts and proffered medical exhibits demonstrate "mental instability and a danger to the child." Furthermore, he contends in his brief that, while in Ms. Aymond's care, the child has accrued excessive absences from school and that Ms. Aymond has allowed "a man with dementia to babysit" the child. Mr. Aymond contends this record evidence supports his request for change of domiciliary status.

Notably, and as acknowledged by Mr. Aymond, the 2013 considered decree designated Ms. Aymond as the child's domiciliary parent. As a starting point of the pertinent analysis, La.Civ.Code art. 131 provides that: "In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child." The Article is to "be followed in actions to change custody as well as in those to initially set it." La.Civ.Code art. 131, cmt. (d). *See also Gray v. Gray*, 11-548 (La. 7/1/11), 65 So.3d 1247. Referencing its earlier decision in *Bergeron*, 492 So.2d 1193, the supreme court has explained that:

> When a party seeks to change custody rendered in a considered decree, the proponent of change not only must show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody, but he or she also "bears the heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child." *Bergeron*, 492 So.2d at 1200; *AEB v. JBE*, 99-2668, p. 7 [La. 11/30/99,] 752 So.2d at 761; *See also Evans v. Lungrin*, 97-0541, pp. 12-13 (La. 2/6/98), 708 So.2d 731, 738. This burden of proof is imposed as a means of implementing the best interest standard in light of the special considerations present in change of custody cases. *AEB v. JBE*, 99-2668, p. 7, 752 So.2d at 761. The determination of the trial court in child custody matters is entitled to great weight, and its discretion will not be disturbed on review in the absence of a clear showing of abuse. *Bergeron*, 492 So.2d at 1196.

*Gray*, 65 So.3d at 1258-59.

Based on the evidence presented, we find no abuse of discretion in the trial court's determination to maintain Ms. Aymond as the domiciliary parent. Mr. Aymond contends that Ms. Aymond has evidenced disturbing behavior that satisfies the above-standard. However, the text messages entered into evidence, and on which Mr. Aymond relies, demonstrate a continued pattern of friction between the parties and reflects on the conduct of both parties.

7

Furthermore, and although the director of the child's school suggested that the child had been absent from her kindergarten class twelve to fifteen times during the school year, she noted that each had been excused and were medical in nature. Moreover, the director explained that the child appeared to be well adjusted and was appropriately clothed and nourished. Further, to the extent Mr. Aymond asserts that Ms. Aymond allowed supervision by an inappropriate caregiver, Mr. Aymond's evidence on this point was scant at best. He did not produce any evidence indicating either the extent of any infirmity, the parameters of that supervision, or whether any type of endangerment resulted.

For these reasons, we find no merit in Mr. Aymond's contention that the trial court erred in denying his request for domiciliary parent status.

*Physical Custody Schedule*

Finally, Mr. Aymond contends that the trial court erred in denying his request for shared or equal physical custody time. Mr. Aymond notes that Dr. Kenneth Bouillion, a psychologist, consulted the family and rendered a February 2017 report to the trial court regarding the parties' respective custody concerns. Mr. Aymond suggests in his brief that the trial court erred insofar as it rejected Dr. Bouillion's recommendation "that the father have visitation . . . on alternate weekends from Thursday after school until Monday before school, and on Wednesday and Thursday overnight in the off week." He contends that, although the trial court was not required to adopt that recommendation, the trial court should have deferred to Dr. Bouillion as an expert insofar as his opinion was uncontroverted.

After review, however, we maintain the trial court's ruling. First, we note that Mr. Aymond suggests that the physical custody schedule arrived at by the trial

court "inhibits the minor child's ability to enjoy the mandate of [La.R.S] 9:3[3]5[.]" Certainly, La.R.S. 9:335(A)(2)(b) provides that: "To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally." However, it is critical to recognize that the provision relates to "a proceeding in which joint custody is decreed" and the trial court's issuance of a joint implementation order. La.R.S. 9:335. The present case, however, involved a request for modification of a pre-existing joint custody order. Thus, Mr. Aymond was required to satisfy his burden of proving that such a modification was necessary.

In rejecting Mr. Aymond's request, the trial court generally discussed the friction between the parties, as well as the difficulties that surrounded the parents' transfer of physical custody. The trial court particularly addressed Dr. Bouillion's recommendation regarding the physical custody schedule during the school year, stating:

> The present visitation schedule will remain the same unless agreed to by the parties except that the court will add one additional . . . and I told ya'll in the pre-trial when we were talking about it two nights overnight is too much disruption for school. Ya'll are doing one night in the off week overnight and the other one what I'm saying is I'm adding a three hour period of time for him to take [the child] to go eat or go to the movies or do something just the two of them together as a quality time with the parent. Another night on an off week in addition to the overnight. I think ya'll been agreeing on Wednesday. And Dr. Bouillion said Wednesday or Thursday, I just think that's too much. That's disruptive in school. So I don't agree with Dr. Bouillion on everything.[3]

---

[3] While the trial court rejected Dr. Bouillion's recommendation for additional overnight custody during the school year, the trial court indicated agreement with Dr. Bouillion's recommendation that Ms. Aymond be maintained as domiciliary parent. The resulting order also modified the summer physical custody so that each parent would have the child on alternating weeks. In this regard, Dr. Bouillion confirmed that he thought such an arrangement was "commonly done" and appropriate.

9

The trial court did, however, remark on the parties' conduct toward one another, commenting that it would like for the parties to "get along better for [the child]'s benefit, I really would. I would love to see a father have more time with his daughter like Dr. Boullion and everybody recommends, and the older she gets the more she's going to want that. I know she's only five." Obviously, however, the trial court found that such a change was inappropriate at the time of the hearing.

Given the evidence presented and the deference owed to the trial court's determinations, we find no merit in Mr. Aymond's argument regarding the physical custody schedule. Instead, the record supports a finding that Mr. Aymond failed to satisfy his burden of proving that a greater modification—than that provided—was demonstrated. The trial court did not abuse its discretion in determining that stability during the school year was in the child's best interest.

This assignment lacks merit.

### DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this proceeding are assessed to the appellant, Carol Aymond, Jr.

**AFFIRMED.**