WHIPPLE, C.J.
In this custody matter, the mother, Ashley Armstead, appeals from a judgment of the family court denying her request to relocate the minor children and designating the father, Ja'mal Titus,[1] as the domiciliary parent. For the reasons that follow, we affirm the judgment of the family court.
FACTS AND PROCEDURAL HISTORY
Ashley Armstead ("Ashley") and Ja'mal Titus ("Ja'mal") are the parents of two minor children, J.T., born in 2006, and A.T., bom in 2008.[2] The parties never married; however, Ja'mal is listed as the father of the children on their birth certificates.
Based on the agreement of the parties, on March 17, 2014, the family court signed *595 a stipulated judgment in which the parties agreed that Ashley and Ja'mal would share joint physical custody of the minor children, with Ashley designated as the domiciliary parent. The judgment further provided that the parties were to enroll in the Our Family Wizard Program through the East Baton Rouge Parish Family Court, communicate regarding the care of the children and all school and extracurricular activities, and permit the noncustodial parent contact with the children daily by telephone between 8:00 and 9:00 p.m. Ja'mal was awarded physical custody of the minor children three weekends per month from Thursday at pickup from school until Sunday at 3:00 p.m., with the exchange location designated as the maternal grandmother's home on The House of Lancaster Drive in Baton Rouge, unless otherwise mutually agreed upon by the parties. Ashley was awarded physical custody of the minor children on the weekend Ja'mal was exercising monthly military drill duties.[3] The parties agreed to alternate weekly visitation during the summer.
On September 8, 2017, Ja'mal filed a rule to modify physical custody and support, contending that on September 4, 2017, Ashley notified him via a text message that she had relocated with the minor children from Baton Rouge, Louisiana, to Youngsville, Louisiana, a distance of over 75 miles from Ashley's address in Baton Rouge, and, further, that she had done so without first obtaining his consent. Ja'mal contended that the move was "reckless and harmful" to the children, disrupted their schooling, completely changed every aspect of their lives, and prevented him from exercising his designated periods of visitation and physical custody of the children. Ja'mal averred that this change in circumstances in the lives of the children warranted a modification of the physical custody schedule. Thus, he requested that the family court order that the children be immediately returned to Baton Rouge to primarily reside with him and that Ashley be awarded alternating weekend visitation. Ja'mal further requested that he be designated as the domiciliary parent, contending that Ashley frequently enrolled the children in different schools and school districts, which he averred was "turbulent" for the emotional development and stability of the children.
Ashley filed an answer and reconventional demand, contending she had recently married in July of 2017, and that she and the children moved to Youngsville to live with her husband, Marcus Amos. Ashley further contended that although the distance to Youngsville is less than 75 miles, she notified Ja'mal of the move via text message and that subsequently, with the help of counsel, she provided notice to Ja'mal pursuant to LSA-R.S. 9:355.4.[4] Ashley further averred that she relocated for a job opportunity as a registered nurse at Women and Children's Hospital in Lafayette and that the children's material, educational, and emotional needs could continue to be met at their new home. Accordingly, Ashley requested that the previous custody arrangement remain in place with a new designated exchange location.
Pending a trial on the matter, an interim stipulated judgment was entered into by the parties on October 17, 2017. The matter was ultimately tried before the family *596 court on January 8, 2018. At the conclusion of trial, the family court ruled orally, finding that the relocation was in excess of 75 miles such that the relocation statutes applied, and that Ashley failed to meet her burden of showing that the relocation was in good faith and in the best interest of the children pursuant to LSA-R.S. 9:355.14. In so ruling, the family court found that Ashley's testimony that she found a job that paid slightly more than her nursing job in Baton Rouge was insufficient to meet her burden, when there was no evidence that Ashley searched for a higher paying job in Baton Rouge or the surrounding area. The court determined that instead, the purpose of Ashley's move to Youngsville was to live with her husband. The family court found that Ashley failed to properly notify Ja'mal of the relocation, ordered that the children be returned to East Baton Rouge Parish immediately, and ordered that Ashley be sanctioned by paying Ja'mal's expenses in objecting to the relocation pursuant to LSA-R.S. 9:355.6.
As to designation of the domiciliary parent, the family court then reviewed the best interest factors outlined in LSA-C.C. art. 134 and determined that it was in the best interest of the children that Ja'mal be designated as the domiciliary parent. The family court awarded Ashley two weekends of visitation per month, with one being the weekend Ja'mal had military drill duties, and ordered that the parties were to alternate weekly visitation during the summer and share holidays.
On April 2, 2018, the family court signed a "Considered Decree," finding that there had been a material change in circumstances since the 2014 stipulated judgment, which had designated Ashley as the domiciliary parent of the minor children, and thereby ordered that:[5]
(1) Ashley's request to relocate J.T. and A.T. to Youngsville was denied;
(2) J.T. and A.T. were to be returned to East Baton Rouge Parish immediately;
(3) Ashley's status as the domiciliary parent of J.T. and A.T. was terminated;
(4) Ja'mal was designated as the domiciliary parent of J.T. and A.T.;
(5) Ja'mal's request for make-up visitation was denied;
(6) J.T. and A.T. were to be exchanged at the maternal grandparent's home on The House of Lancaster Drive in Baton Rouge, unless otherwise mutually agreed upon by the parties;
(7) J.T. and A.T. primarily reside with Ja'mal and that Ashley be provided with physical custody of the minor children for two weekends a month, with one of those weekends being the weekend that Ja'mal is attending military drill;
(8) Ja'mal and Ashley equally share physical custody of J.T. and A.T. during the children's summer vacation from school;
(9) The parties equally share the children's holidays from school and mutually agree on a holiday visitation schedule. In the event that the parties are unable to agree upon a holiday schedule, the parties may request that the trial court establish a court date for the purpose of setting a holiday schedule. Until the parties agree on a holiday schedule, the current holiday schedule found within the previous judgments in this matter would apply;
(10) Ashley was in contempt of court for failing to facilitate visitation from the time she moved to *597 Youngsville until the interim visitation judgment was rendered on October 17, 2017;
(11) Ashley was responsible for payment of $ 3,500.00 in reasonable expenses, including attorney's fees, for her act of contempt and failure to comply with the relocation statute (to be paid within 90 days of the rendering of judgment); and
(12) All court costs were assessed to Ashley.
Following the denial of her motion for new trial, Ashley filed the instant appeal, contending that the family court: (1) erred in denying her motion for new trial after improperly applying the relocation statutes; (2) erred by improperly weighing the factors for consideration of the best interest of the child set forth in LSA-C.C. art. 134 ; and (3) erred in designating Ja'mal as the domiciliary parent and uprooting the children from their mother with whom they have primarily resided since birth.[6]
DISCUSSION
Assignment of Error Number One
In her first assignment of error, Ashley contends that the family court erred in denying her motion for new trial. Specifically, she contends that the relocation statutes were incorrectly applied herein, where the relocation distance is less than 75 miles utilizing radial or "as-the-crow-flies" miles to calculate the distance, rather than roadway miles.
The statutes that govern the relocation of a child's residence, codified in LSA-R.S. 9:355.1, et seq. , apply if there is a court order awarding custody and there is an intent to establish the principal residence of a child at any location within the state that is at a distance of more than 75 miles from the principal residence of the child at the time that the most recent custody decree was rendered. LSA-R.S. 9:355.2(B)(3).
Louisiana Code of Civil Procedure article 1972 provides that a new trial shall be granted: (1) when the verdict or judgment appears clearly contrary to the law and the evidence; (2) when the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial; or (3) when the jury was bribed or has behaved improperly so that impartial justice has not been done. Moreover, pursuant to LSA-C.C.P. art. 1973, a *598 new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law. The standard of review of a denial of a motion for new trial, whether based on peremptory or discretionary grounds, is that of abuse of discretion. Jackson v. Wise, 2017-1062 (La. App. 1st Cir. 4/13/18), 249 So.3d 845, 856, writ denied, 2018-0785 (La. 9/21/18), 252 So.3d 914. When a motion for new trial is filed, it is the mover's burden to prove to the trial court that she is entitled to a new trial. Jackson v. Wise, 249 So.3d at 856.
The basis of Ashley's motion for new trial pursuant to LSA-C.C.P. art. 1972 was her post-trial discovery of Holley v. Holley, 2017-325 (La. App. 5th Cir. 11/20/17), 232 So.3d 717. In Holley, the court held that the appropriate method used to measure "miles" under the relocation statutes is by radial miles, or "as the crow flies," rather than by surface or road miles. Holley v. Holley, 232 So.3d at 727. Ashley avers that her discovery of this case constitutes "new evidence," which she could not, with due diligence, have obtained prior to trial, and that this jurisprudence establishes that the relocation statutes were incorrectly applied herein, where the distance between the parties' homes was less than 75 miles. In support, Ashley attached two "As the Crow Flies" Distance Calculators showing the distance from Ja'mal's home in Baker to Ashley's home in Youngsville as 61 miles and the distance from Ja'mal's mother's residence at Cedar Line Drive in Baton Rouge to Ashley's home in Youngsville as 65 miles. Ashley further urged that a new trial was warranted pursuant to LSA-C.C.P. art. 1973 based upon her claims of ineffective assistance of counsel, where she claimed that her trial counsel: (1) failed to object to questions posed to her; (2) failed to alert the court or offer evidence of the improper application of the relocation statute; and (3) failed to file a motion to request that the court conduct a Watermeier interview of the children.[7]
Following a hearing, the family court denied Ashley's motion for new trial with reasons. In its reasons, the court pointed to its finding at trial that the relocation distance was 75.8 miles utilizing "Google Maps" and 76 miles utilizing "Apple Maps," and disagreed with the finding of the appellate court in Holley. Rejecting the use of radial miles or the "as-the-crow-flies" method of measurement to calculate the distance for relocation, the family court stated:
The mode of transportation in the modem world is by automobile, not boat, plane, helicopter, or some sort of aerocar reminiscent of The Jetsons' television show. The only practical and economical way of traveling between places is in an automobile and by using surface roads. Using any other method to calculate the distance would lead to absurd consequences. Flying in a plane, helicopter or aerocar directly from the old residence to the new residence would be impractical, as it would be by boat. Additionally, it would be impossible in Louisiana to walk in a straight line from one residence to the other without either being stopped by a marsh or body of *599 water or without trespassing on private property. This Court is not bound by the ruling in Holley and the use of road miles is clearly not contrary to the law.
The family court further noted that Holley was decided prior to trial herein, and although the court would not have ruled differently, with due diligence, evidence of radial miles nonetheless could have been obtained before or during trial and the issue could have been argued at trial. The court thus determined that Ashley failed to meet any of the peremptory grounds set forth in LSA-C.C.P. art. 1972 as a basis for warranting a new trial.
The court further rejected the discretionary grounds urged by Ashley, i.e., her claims of ineffective assistance of counsel, as a basis for a new trial under LSA-C.C.P. art. 1973. The family court found instead that it was an attorney's prerogative as to whether to object to questions or offer evidence and that the court had advised Ashley's trial counsel that the court would not conduct an interview with the children for the purpose of determining the best interest of the children due to the ages of the children, which were nine and ten at the time of trial.
Finally, the family court held that the allegations set forth in Ashley's motion for new trial were not verified by an affidavit of the applicant as required by LSA-C.C.P. art. 1975.[8]
On review, we agree that Ashley failed to meet her burden of proof that she was entitled to a new trial on either the peremptory or discretionary grounds alleged. We note that the discovery of a non-binding case or court ruling from another jurisdiction, whether newly discovered or not, is not considered "evidence," where knowledge of the law is presumed. Moreover, to the extent that Ashley relies on the Google map introduced at trial that showed a distance of 74.1 road miles, less than a mile shy of 75 miles, she concedes in brief and at trial that in arriving at that distance, she opted to have the route computed by the shortest distance, not time of travel.[9] Cf. Bush v. Bush, 2013-0922 (La. App. 1st Cir. 12/27/13), 137 So.3d 49, 51-52 (where the mother argued that the relocation statutes should not apply, as her relocation from Ponchatoula to Slidell was within the state of Louisiana and was less than 75 miles, and this court held that those facts alone would not prevent a court from determining whether a relocation of the children would be in their best interest, particularly where the court had previously restricted the mother from relocating outside of Tangipahoa Parish).
After thoroughly reviewing the record herein, we agree with the reasons assigned by the family court and find no abuse of the family court's discretion in denying Ashley's motion for new trial.
Assignments of Error Two and Three
In these assignments of error, Ashley contends that: (1) the family court erred in finding that she failed to meet her burden of proving that the relocation was in good faith and in the best interest of the children; and (2) in thereafter improperly weighing the factors to consider the best interest of the child set forth in LSA-C.C. art. 134 and designating Ja'mal as the *600 domiciliary parent of the minor children, when they have resided with Ashley since birth.
With regard to relocation of the children, a parent proposing relocation of the principal residence of the child has the burden of showing that: (1) the request for relocation is made in good faith; and (2) the relocation is in the child's best interest. LSA-R.S. 9:355.10 ; Curole v. Curole, 2002-1891 (La. 10/15/02), 828 So.2d 1094, 1097. A trial court's determination in a relocation matter is entitled to great weight and will not be overturned on appeal absent a clear showing of abuse of discretion. Curole v. Curole, 828 So.2d at 1096.
Louisiana Revised Statute 9:355.14[10] sets forth twelve factors which the court must consider in determining whether the proposed relocation is in the best interest of the child.[11] Hernandez v. Jenkins, 2012-2756 (La. 6/21/13), 122 So.3d 524, 528. When considering these factors, there is no requirement that the court give preferential consideration to any factor. Gray v. Gray, 2011-548 (La. 7/1/11), 65 So.3d 1247, 1255. Although there are twelve factors for the court to consider, it is not necessary for the court to expressly analyze each factor in its oral or written reasons for judgment in a relocation case. Bush v. Bush, 137 So.3d at 51.
Moreover, a person proposing relocation of a child's principal residence shall notify any person recognized as a parent and any other person awarded custody or visitation under a court decree as required by LSA-R.S. 9:355.5. LSA-R.S. 9:355.4(A). The notice requirements of a proposed relocation are as follows:
A. Notice of a proposed relocation of the principal residence of a child shall be *601 given by registered or certified mail, return receipt requested, or delivered by commercial courier as defined in R.S. 13:3204(D), to the last known address of the person entitled to notice under R.S. 9:355.4 no later than any of the following:
(1) The sixtieth day before the date of the proposed relocation.
(2) The tenth day after the date that the person proposing relocation knows the information required to be furnished by Subsection B of this Section, if the person did not know and could not reasonably have known the information in sufficient time to provide the sixty-day notice, and it is not reasonably possible to extend the time for relocation of the child.
B. The following information shall be included with the notice of intended relocation of the child:
(1) The current mailing address of the person proposing relocation.
(2) The intended new residence, including the specific physical address, if known.
(3) The intended new mailing address, if not the same.
(4) The home and cellular telephone numbers of the person proposing relocation, if known.
(5) The date of the proposed relocation.
(6) A brief statement of the specific reasons for the proposed relocation of a child.
(7) A proposal for a revised schedule of physical custody or visitation with the child.
(8) A statement that the person entitled to object shall make any objection to the proposed relocation in writing by registered or certified mail, return receipt requested, within thirty days of receipt of the notice and should seek legal advice immediately.
C. A person required to give notice of a proposed relocation shall have a continuing duty to provide the information required by this Section as that information becomes known.
LSA-R.S. 9:355.5.
In the instant case, the family court did not specifically find that Ashley's move was in bad faith, but, after reviewing the best interest factors, the court found that Ashley failed to meet her burden of showing that the relocation was in the best interest of the children. In this regard, the family court determined that the testimony established that prior to the move, the children were doing well in Baton Rouge and all of their family and support was located in Baton Rouge. The court further found that Ashley knew that she was moving to the Youngsville/Lafayette area, that she had an obligation to notify Ja'mal, and that her notification via a text message to Ja'mal was not a proper method of notification.[12] The court further determined that the reason for the relocation was Ashley's marriage to Mr. Amos, not for a better job opportunity. Although the family court declined to impose sanctions for frivolous or unwarranted relocation,[13] the court, citing *602 Ashley's failure to give Ja'mal proper notice of the relocation, ordered that the children be returned to East Baton Rouge Parish immediately pursuant to LSA-R.S. 9:355.6(2) and that Ashley pay Ja'mal's reasonable expenses in objecting to the move pursuant to LSA-R.S. 9:355.6(3).[14]
We have thoroughly reviewed the testimony and evidence presented herein. As the family court correctly found, it is uncontroverted that these children have done exceptionally well in school and are very talented. We have no doubt that Ashley's efforts in raising the children attributed to their good character and success. Nonetheless, on review, we find no abuse of discretion in the trial court's determination that Ashley failed to meet her burden of establishing that a relocation to Youngsville from Baton Rouge, where they have resided their entire lives, where their father, maternal grandparents, and paternal grandparents live, and where the children are involved in extra-curricular activities and are thriving in school, was in the children's best interest.
As to Ashley's contention that the family court erred in designating Ja'mal as the domiciliary parent, we note that in child custody matters, each case must be viewed in light of its own particular set of facts and circumstances. Major v. Major, 2002-2131 (La. App. 1st Cir. 2/14/03), 849 So.2d 547, 550. The best interests of the child is always the paramount consideration in determining child custody. LSA-C.C. art. 131 ; Evans v. Lungrin, 97-0541, 97-0577 (La. 2/6/98), 708 So.2d 731, 738.
A trial court's determination of a child's best interests is usually based heavily on factual findings. Henry v. Henry, 2008-0689 (La. App. 1st Cir. 9/23/08), 995 So.2d 643, 645. The trial court is in the best position to ascertain the best interests of the child given the unique set of circumstances. Accordingly, a trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Major v. Major, 849 So.2d at 550.
It is well settled that an appellate court cannot set aside a trial court's factual findings in the absence of manifest error or unless the findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). If the trial court's findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced it would have weighed the evidence differently had it been the trier of fact. Rosell v. ESCO, 549 So.2d at 844. In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Stobart v. State, through the Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993).
In cases, such as the instant case, where the underlying custody decree is a *603 stipulated judgment, a party seeking a modification must prove that: (1) there has been a change in circumstances materially affecting the welfare of the children since the original (or previous) custody decree was entered; and (2) that the proposed modification was in the best interest of the children. Tinsley v. Tinsley, 2016-0891, 2016-0892 (La. App. 1st Cir. 1/18/17), 211 So.3d 405, 412.
In determining the best interest of a child, LSA-C.C. art. 134 enumerates twelve non-exclusive factors to be considered by the court, which include:[15]
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
In considering the best interest factors, the family court herein determined that the emotional ties between the parent and child, capacity to provide love, affection, spiritual guidance and education, as well as capacity to provide for material needs was equal as to both parties. However, with regard to the length of time the children have lived in a stable environment and the desirability to maintain continuity, the court found there has been a change in circumstances since the children were moved to Youngsville.
With reference to the moral fitness of the parties as it affects the welfare of the children, the court found that although Ja'mal may have been late picking up the children a few times and missed some visitation in 2016, he was an engaged parent. The court further stated that it did not approve of Ja'mal's use of "less than flattering terms" in certain text messages to Ashley and commended Ashley for her grace and composure, yet noted that there was no evidence that the children were exposed to those messages or that they materially affected the children or their best interests. In weighing the willingness and ability of each party to facilitate and encourage a close and loving relationship *604 between the child and other party, however, the court noted that Ashley fell way short of Ja'mal in that respect.
After hearing all of the testimony presented, the family court further determined that the evidence established that Ashley failed to confer with Ja'mal pursuant to LSA-R.S. 9:336, which provides that "[j]oint custody obligates the parents to exchange information concerning the health, education, and welfare of the child and to confer with one another in exercising decision-making authority," when making decisions concerning the children's education and special events such as J.T.'s baptism.
On review, we find no error in the family court's determination that Ashley's relocation to Youngsville constituted a material change in circumstances since their previous stipulated judgment in 2014, which designated Ashley as the domiciliary parent, and that after considering the best interest factors, Ja'mal should be designated as the domiciliary parent of A.T. and J.T.
Under the circumstances presented herein, and after a thorough review of the testimony and evidence, we agree with the family court that Ashley failed to meet her burden of establishing that it was in the best interest of the children to relocate to Youngsville. Thus, we are unable to say the family court erred in designating Ja'mal as domiciliary parent.
Accordingly, we find no merit to these assignments of error.[16]
CONCLUSION
For the above and foregoing reasons, the April 2, 2018 judgment of the family court is hereby affirmed. Costs of this appeal are assessed to the appellant, Ashley Armstead.
AFFIRMED.
McClendon, J. dissents in part for reasons assigned.
MCCLENDON, J., dissenting in part.
I disagree with the majority's conclusion that the trial court properly applied the relocation statutes. LSA-R.S. 9:355.2B.(3) provides that the relocation provisions apply to an order regarding custody of a child where "[t]here is a court order awarding custody and there is an intent to establish the principal residence of a child at any location within the state that is at a distance of more than seventy-five miles from the principal residence of the child at the time that the most recent custody decree was rendered." During the trial on the father's rule to modify custody, the children's mother introduced uncontroverted evidence that the distance between the children's principal residence in Baton Rouge, Louisiana and their new residence in Youngsville, Louisiana is only 74 miles. Consequently, the relocation statutes do not apply.
The trial judge disregarded the mother's evidence and, instead, conducted his own evidentiary search, using his mobile phone, to determine the distance between the two residences. The trial court then relied on his findings to apply the relocation statutes. Because the only evidence admitted *605 into the record established that the distance between the relevant domiciles is less than 75 miles, I believe the trial court erred in applying the relocation statutes and in holding the mother in contempt and in ordering her to pay $ 3,500 in reasonable expenses, including attorney's fees. Considering this, I dissent in part.

We note that at times, "Ja'mal" is also referred to as "Jamal" in the record.

In order to protect the privacy of the minor children, we will refer to them by use of their initials throughout the opinion herein. See generally Uniform Rules - Courts of Appeal, Rules 5-1 and 5 -2.

Ja'mal testified that he joined the Army in May of 2008 and currently serves as a member of the Army Reserves.

In response to Ja'mal's request for production of documents, Ashley provided a Google map from her parents' home on The House of Lancaster Drive in Baton Rouge to Ashley's home in Youngsville, which showed a distance of 74 miles.

The judgment erroneously refers to the trial date as January 8, 2017.

Although Ashley's motion for appeal references the August 7, 2018 judgment denying her motion for new trial, it is clear from Ashley's brief that her first assignment of error pertains to the denial of her motion for new trial, whereas her second and third assignments of error challenge rulings of the family court in the April 2, 2018 judgment on the merits. Although a judgment denying a motion for new trial is an interlocutory order and is generally not appealable, see LSA-C.C.P. art. 2083(C), when a motion for appeal refers by date to the judgment denying a motion for new trial, but the circumstances indicate that the appellant actually intended to appeal from the final judgment on the merits, the appeal should be maintained as being taken from the judgment on the merits. See Hickman v. Exxon Mobil Corporation, 2017-0235 (La. App. 1st Cir. 7/18/18), 255 So.3d 1097, 1101, writ denied , 2018-1463 (La. 11/20/18), 256 So.3d 996 ; Carpenter v. Hannan, 2001-0467 (La. App. 1st Cir. 3/28/02), 818 So.2d 226, 228-229, writ denied, 2002-1707 (La. 10/25/02), 827 So.2d 1153. Moreover, an appellate court may consider interlocutory judgments, such as the denial of a motion for new trial, as part of an unrestricted appeal from a final judgment. Henry v. Sullivan, 2016-0564 (La. App. 1st Cir. 7/12/17), 223 So.3d 1263, 1272. Thus, on review, we find that the issues set forth in Ashley's assignments of error concerning the denial of her motion for new trial and the propriety of the judgment on the merits are properly before us in this appeal.

In Watermeier v. Watermeier, 462 So.2d 1272 (La. App. 5th Cir. 1985), writ denied, 464 So.2d 301 (La. 1985), the court held that in child custody hearings, the judge may conduct an interview with the child in chambers, outside of the presence of the parents, but in the presence of their attorneys, with a record being made by a court reporter. Pursuant to Watermeier, only after the judge has determined the competency of a child as "a person of proper understanding," should the judge continue to interview the child. Further, the attorneys may not participate by questioning, cross-examining, or registering objections to the judge's questions. Watermeier, 462 So.2d at 1275.

Louisiana Code of Civil Procedure article 1975 provides that:
A motion for a new trial shall set forth the grounds upon which it is based. When the motion is based on Article 1972(2) and (3), the allegations of fact therein shall be verified by the affidavit of the applicant.

Ashley contends in brief that evidence was also submitted from Bing.com and Mapquest showing driving routes with distances of less than 75 miles, but we are unable to locate any such evidence in the record before us on appeal.

In 2012, LSA-R.S. 9:355.12 was amended and renumbered as LSA-R.S. 9:355.14. See LA Acts 2012, No. 627, § 1.

The factors listed in LSA-R.S. 9:355.14(A) include:
(1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.
(3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.
(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.
(7) The reasons of each person for seeking or opposing the relocation.
(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.
(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.
(10) The feasibility of a relocation by the objecting person.
(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.
(12) Any other factors affecting the best interest of the child.

Ashley testified that she wrote a letter to Ja'mal notifying him that she and the children were moving to Lafayette and explaining where the children were going to be attending school that she was going to send via certified mail, but she intercepted the letter and decided not to mail it. She explained that she did not think she had to send the letter because the move was not in excess of 75 miles and thus his consent was not required.

Louisiana Revised Statute 9:355.19 provides for sanctions for unwarranted or frivolous proposal to relocate a child or objection to such relocation.

Louisiana Revised Statute 9:355.6, entitled, "Failure to give notice of relocation," provides that:
The court may consider a failure to provide notice of a proposed relocation of a child as:
(1) A factor in making its determination regarding the relocation of a child.
(2) A basis for ordering the return of the child if the relocation has taken place without notice or court authorization.
(3) Sufficient cause to order the person proposing relocation to pay reasonable expenses incurred by the person objecting to the relocation.

Louisiana Civil Code article 134 was subsequently amended by La. Acts 2018, No. 412, § 1, eff. May 23, 2018.

In his brief on appeal, Ja'mal requests that Ashley be sanctioned for frivolous appeal where she failed to raise a serious legal issue or cite support for her argument on appeal. See LSA-C.C.P. art. 2164 ; Uniform Rules - Courts of Appeal, Rule 2-19. However, where Ja'mal neither appealed nor filed an answer to Ashley's appeal, such an award is precluded in this case. See LSA-C.C.P. art. 2133 ; State ex rel. Division of Administration, Office of Community Development v. Tujague, 2015-1457 (La. App. 1st Cir. 4/15/16), 193 So.3d 223, 228 n.6.